GEORGE B. RICHARDSON et al. v. JOHN A. MILLER.

1. ESTATES—JOINT TENANCY.—Joint tenancy is created by the same instrument as a deed or will, and involves a unity of title and interest as to its nature, duration and quantity. Each tenant is seized of the whole and of every part, and each may exercise all reasonable acts of ownership. Litt. 288; Co. Litt. 186; 4 Kent Com. 394. If there be three joint tenants, and one convey his interest, the grantee becomes tenant in common with the other two, and they, as to each other, remain joint tenants.

2. ESTATES—COPARCENERS.—Coparceners derive their estate by inheritance. Their interests may be unequal, as that of a daughter and the descendants of a deceased daughter, all taking by the same descent.

3. ESTATES—COPARCENERS AND JOINT TENANTS—MISSISSIPPI STATUTES.—The 17th and 18th articles of chap. 36 of the Code of 1857, have dispensed with its nice distinctions existing at common law between the several sorts of joint estates, by converting joint tenancy into tenancy in common, unless a manifest intention to the contrary appears in the instrument creating the estate.

4. ESTATES—JOINT TENANTS AND TENANTS IN COMMON—POWER TO CONVEY.—One joint tenant or tenant in common cannot convey a distinct portion of the estate, by metes and bounds, so as to prejudice his co-tenants or their assigns. As to them such deed is inoperative and void, though, by way of estoppel, it may be good as against the grantor.

APPEAL from the Chancery court of Holmes county, HOOKER, Chancellor.

The appellants, except Travis M. Brooks and J. L. Covert, were the children and heirs-at-law of Lewis

Richardson, Sr., and his wife, Sarah M. Richardson. William H. Richardson, Sr., deceased, grandfather of said children, by his will devised to Lewis Richardson, Sr., and Sarah M. Richardson, for life, with remainder to said children, a large and valuable tract of land in Holmes county, Mississippi, said tract containing about 2,998 acres.

On the 2d March, 1858, Lewis Richardson, Jr., and George B. Richardson, two of said heirs, made and delivered to Miles, Adams & Co., their promissory note, due twelve months after date, for the sum of $7,220.57, with interest at 8 per cent per annum from its date. On the 15th of March, 1858, Lewis Richardson, one of the makers of said note, for the purpose of securing said note, made and executed a deed of trust on a part of the land so devised, conveying, not his undivided one-seventh interest in the whole tract, but conveying about 979-67 acres of said tract, describing the land conveyed by numbers, sections and range. He also conveyed in said deed of trust a number of negro slaves. About the time of the maturity of said note, the sum of $3,600 was paid thereon.

The record does not show when Lewis Richardson, Sr., and his wife, Sarah M. Richardson, died; but they having been dead a number of years, two of the heirs, Edmond B. Richardson and Bonner Richardson, being of age, filed their petition in the probate court, in 1866, praying for a partition of said tract of land, and an allotment of their respective shares. To this petition, Geo. B. Richardson, Albert Richardson, William H. Richardson, Lewis Richardson, and Travis M. Brooks, guardian of Wm. H. Richardson, were made parties defendants. Albert Richardson and Reynolds Richardson, at that time, were minors. Wm. H. Richardson was *non compos mentis*, and Travis M. Brooks was his guardian. The probate court appointed a guardian *ad litem* for the two minors and for Wm. H. Richardson,

and the said guardian filed his answer. During the pendency of the proceedings in partition, but after citation served on Lewis Richardson, Jr., he departed this life. A decree for the partition of said lands into seven equal shares was rendered, that being the num- of heirs when the petition was filed, including Lewis Richardson, Jr.

The commissioners appointed by the court were, T., M. Brooks, E. B. Steinback, F. Andrews and Spencer Carradine. The commission, as issued by the clerk, contained the names of, and was directed to, T. M. Brooks, Gib Barnes, E. B. Steinback, F. Andrews and Spencer Carradine. F. C. Mercer was appointed special deputy by the sheriff to execute and return the writ.

The parties who made the report were Robt. Lusk, T. M. Brooks and E. B. Steinback. The report showed that " after being assembled and sworn, they caused the land to be surveyed in their presence, and after careful examination, they proceeded to divide the land in seven equal shares, and allotted one share to each heir by ballot." The return or report of the commis- sioners is made under oath, and is dated September 26, 1866. This report was, by a decree of the probate court, " ratified and confirmed, to be observed by all parties concerned therein," and was ordered to be recorded. This was at the September term, 1866.

Subsequent to said partition, other parties have be- come interested in said lands by purchase of certain shares designated. The answer of Bonner Richardson and Geo. B. Richardson shows that the undivided in- terest of Lewis Richardson and Geo. B. Richardson was sold at sheriff's sale, and it was the intention to have stated as a fact that this sheriff's sale was subsequent to the partition. The bill of complainant says that the entire interest of Geo. B. Richardson in said lands, except those in T. 15 R. 3 west, was sold at sheriff's

sale and purchased by N. G. Nye, who claims the same, and that the entire interest of Lewis Richardson in said lands, except the parcels in T. 15 R. 3 west, have been sold at sheriff's sale and purchased by said Nye, who claims all the interest of the said Lewis Richardson, except in the parcels embraced in the deed of trust.

In the year 186–, subsequent to said partition, subsequent to the acquisition of interests or shares by other parties, subsequent to the sale of the interest of Lewis and George B. Richardson, by the sheriff, John A. Miller filed his bill in the chancery court of Holmes county, praying that the partition be decreed to be null and void; prays that commissioners be appointed to ascertain and set apart the shares of Lewis Richardson in the parcels of land embraced in the deed of trust. Said bill alleges the death of the two trustees, and prays for the appointment of other trustees to sell said lands on the terms prescribed in the deed of trust.

Demurrers are filed by Travis M. Brooks, George B. Richardson, Bonner Richardson, Mary J. Stanford and Edward Richardson, and overruled. These parties, except Geo. B. Richardson and Bonner Richardson, failing to answer further, *pro confesso* was taken against Albert Richardson, Amandus Parosot, N. G. Nye, William Burns, J. L. Covert and E. B. Richardson.

Bonner Richardson and Geo. B. Richardson, by leave of court, and under oath, filed their answer, and deny that Miller, or Miles, Adams & Co., or the trustees, were necessary parties in the partition, or were entitled to notice. They insist that the decree of the probate court, ratifying and confirming the report of the commissioners, is binding and conclusive upon all parties before the court; that all persons who had a right to be made parties were made such, and were in court by the process thereof. They deny that the proceedings were void, but insist that they are binding and con-

clusive; deny that Miles, Adams & Co., or their assignee, have now or have had any lien on any part of said tract of land, and insist that the pretended deed of trust referred to in complainant's bill is utterly null and void as to defendants in said bill; deny that the lands allotted to Lewis Richardson are of inferior quality as compared with the other shares, and insist that the division was fair, equal and just.

The proof taken shows that all of the shares were of about equal value; that the share allotted to Lewis Richardson was considered, in 1866, when the partition was made, of about equal value with the shares allotted to the other heirs.

On the 25th of May, 1871, a final decree was rendered, declaring the partition null and void; new trustees were appointed, with power to execute said deed of trust as fully and completely as could have been done by the original trustees. It was also adjudged that Lewis Richardson had a one-seventh interest in the lands embraced in said deed of trust.

From this decree an appeal is taken to the supreme court.

*A. M. Harlow*, for appellants.

In this case the bill of the complainant was clearly demurrable; and, in overruling the demurrers referred to in the first, second and third assignment, the court below committed error. As to this, we think there can be no doubt. Without charging fraud in the proceeding, in obtaining the partition or in its confirmation, the complainant seeks in the chancery court to have a decree of the probate court, which had jurisdiction of the subject-matter and of the parties, declared null and void. Where the probate court has full jurisdiction of a matter, its judgment is final, and cannot be disturbed, unless fraud is charged and proved. 5 S. & M. 130, 751.

The demurrer should have been sustained for another reason.  The bill seeks, in the chancery court, to have commissioners appointed to set apart to complainant a one-seventh interest in the lands embraced in the deed of trust, which complainant insists was the interest to which Lewis Richardson was entitled.  But, when some of the parties interested are minors, as is the fact in this case, the jurisdiction for partition is expressly conferred on the probate court, and by implication the jurisdiction of the chancery court is excluded.  Rev. Code, 1857, ch. 36, art. 48, p. 316.

Now, the bill of complainant in this case shows upon its face, that some of the parties were minors; that one of them was *non compos mentis*, having a guardian, and there was no law of the state in force when said bill was filed in the chancery court, and when the final decree of partition was rendered, conferring upon the chancery court any jurisdiction in matters of partition, and authorizing said court to divide and apportion lands for joint tenants, tenants in common, or coparceners, when some of the parties are minors or infants. The only law conferring on the chancery court any jurisdiction in matters of partition, except where a sale is necessary in order to effect a partition, is the statute which applies to adult joint tenants, tenants in common and coparceners.  Rev. Code 1857, ch. 36, art. 48, p. 316.

The demurrers should have been sustained for another reason.  The complainant filed his bill in the chancery court, " claiming real estate," or a lien on " real estate under one title, and brought his suit against various defendants, who claim the same estate under distinct and separate sales of different parcels thereof to them separately," there being no fraud charged in the bill, nor is it alleged that the parties, or any of them, under distinct and separate titles, were cognizant of any fraud.  Such a bill is, beyond all question or doubt,

multifarious, and by the very highest authority is demurrable.  Story Eq. Pl. (6th ed.), § 285.

But again, in all cases where the interference of a court of equity is sought, the plaintiff should not only clearly show his title, and right to demand the assistance of the court in his favor, but also, that the case is one of which the court has jurisdiction, and to which it ought to apply its remedial justice.  If this is not done, the suit is fatally defective, and the bill must fail.  Story Eq. Pl. (6th ed.), § 290; Mit. Eq. Pl. by Jeremy, 110, 125, 133, 141, 154, 155, 163; Story Eq, Pl., § 10, p. 241; Cooper Eq. Pl. 179; Bedell v. Hoffman, 2 Paige, 199; Barton's Suit in Eq. 45, 46.

Where a bill was brought for a partition, and also to set aside a lease, made by the plaintiff to a third person, of a part of the estate, on the ground of fraud, it was held that the bill was multifarious, for the parties against whom the partition was sought ought not to be involved in any litigation as to the validity of the lease, in which they had not any interest.  Story Eq. Pl., § 275; Whaley v. Dawson, 2 Sch. & Lef. 367, 370, 371.

In the case before us, the bill seeks to have a one-seventh interest in a part of the tract set apart to complainant, and seeks further to have a decree of the court declaring null and void a partition made by another court.  The case is, therefore, similar to the one just cited (Story Eq. Pl., § 175), which was a bill for partition and to set aside a lease.  The bill here is for partition, in part, and to declare null and void a previous partition; and as it is proposed to take a one-seventh interest out of some of the lots and not out of all, the bill is grossly inequitable and the proposition monstrous.  If a bill for partition and setting aside a lease be demurrable, then a bill which seeks such a partition as is proposed in the bill of the complainant here, is simply iniquitous, and surely is demurrable.

The parties defendant in this chancery suit, who had made purchases from some of the tenants in common, ought not to be involved in any litigation as to the validity of their title, which was traceable back to a partition in which they had not any interest. Story Eq. Pl., § 275; Whaley v. Dawson, 2 Sch. & Lef. 367, 370, 371.

The bill of complainant seeks the appointment of commissioners to set apart the share of complainant in that part of the tract which is embraced in the deed of trust, when it is not shown by the bill that all the defendants have an interest in that part of the tract. It is shown affirmatively by the bill that some of the defendants are not interested in that part of the tract. It is, therefore, insisted by us that the bill is multifarious, because what may be an answer for one defendant would not be an answer for all. Story Eq. Pl., §286 *b;* Hudson v. Madison, 12 Simons, 416.

The bill of complainant in this case assails the legality and the validity of the partition, because neither Miles, Adams & Co., nor the trustees, Morris and Royall, were made parties to the proceeding. But this positon is really untenable, and we should not propose or deem it necessary to make an argument in refutation, but for the apparent earnestness with which the point is pressed. The partition in this case was made under that provision of our statute found in the Revised Code of 1857, ch. 60, § 14, art. 117; and, as to parties, it provides that "the devisee. or heirs, or the guardians of such as are under age, residing in this state, shall be first summoned before any such decree and distribution is made; and if any of them be non-residents, publication shall be made as in other cases of non-resident parties." This is the provision, and it is the only provision in force at that time defining who were the necessary parties to the proceeding. The legislature had determined who were necessary parties, or who should be made

such; and the probate court could not assume legislative functions and engraft upon the statute a provison which the supreme power of the state, the legislative department, had not deemed it wise or expedient to do.

The heirs of Lewis Richardson, Sr., some of whom were minors — the wards of the probate court — had a legal right to a partition of the lands derived from their ancestor; and, without asking the consent or the approval of Miles, Adams & Co., of John H. Miller, or of Morris and Royall, they could demand and claim that partition as an unqualified right; and the court having jurisdiction had no discretion as to granting the prayer for partition, and could not refuse. Nor could the court, before rendering the decree, require that any should be made parties defendant who are not made such by the statute.

That none are required as parties in a proceeding for partition, except those mentioned in Rev. Code, 1857, ch. 60, § 14, art. 117, is placed beyond all doubt and beyond question by the provision that " any mortgage or other lien, executed by any joint tenant, tenant in common or coparcener, shall remain in force on the share of such mortgagor after partition, and on his share only." Rev. Code, 1857, art. 62, p. 320.

Does this provision of the statute favor the view, or is it consistent with the idea, that any are proper and necessary parties in the proceeding for partition, except the heirs, tenants in common, joint tenants or coparceners? If the legislature had designed to indicate that mortgagees and parties who are trustees or beneficiaries in a deed of trust, are not to be made parties in the suit for partition, stronger language would not have been necessary than the language which provides that " any mortgage or other lien, executed by any joint tenant, tenant in common or coparcener, shall remain in force on the share of such mortgagor after

partition, and on his share only." Rev. Code, 1857, ch. 36, § 8, art. 62, p. 320.

Under the New York statute, the proceeding in partition cannot be instituted but by a party who has an estate entitling him to immediate possession. Brownell v. Brownell, 19 Wend. 367. It was the ancient doctrine, under the statutes of Henry VIII, that no persons could be made parties to a writ of partition, or be affected by it, but such as were entitled to the present possession of their shares in severalty; they must be joint tenants and tenants in common in their own or their wives' right, or tenants for life and years. In proceedings by petition for a partition of lands held in common, the application must show a seizin and actual possession. Wilkin v. Wilkin, 1 Johns. Ch. 111; Phelps v. Green, 3 ib. 302; 4 Rand. 493; Martin v. Smith, State Eq. (S. C.) 106; Clapp v. Bromagham, 9 Cow. 530.

But we are not under the necessity of relying exclusively on the decisions of courts outside of our own state upon this question. In giving its decision in a late case, this court has met it fully, and if it were ever an open question here, it cannot now be so regarded. In the case referred to, this court uses the following language: " It is insisted that the other co-tenant with Price, the mortgagor, is a necessary party defendant. The objection is made on the premises that a partition would not be made by the tenants in common after Price had mortgaged his undivided moiety. The general rule is, that partition can only be made between those in the actual or constructive possession. Jenkins v. Van Schenck, 3 Paige, 242; Clapp v. Bromagham, 9 Cow. 530; O'Doherty v. Aldrich, 5 Denio, 320. Other claimants must establish their right by suit, and obtain actual seizure, before they are in condition to demand a partition. The mortgagor in possession, therefore, is the proper party to divide the premises with his

co-tenants, and, when the partition has been made, the mortgage attaches to his moiety in severalty. 1 Washb. on Real Prop. 584; Call v. Barber, 12 Me. 320;" 44 Miss. 577.

The commissioners appointed by the probate court were, T. M. Brooks, E. B. Steinback, F. Andrews and Spencer Carradine. The commission, as issued by the clerk, contained the names and was directed to T. M. Brooks, Gib. Barnes, E. B. Steinback, F. Andrews and Spencer Carradine. The parties who made the report were, Robert Lusk, T. M. Brooks and E. B. Steinback. The only statute under which they could act provided that " the court (meaning the probate court) may order a division to be made, and the shares, as ascertained by three or five disinterested freeholders to be appointed for that purpose, who shall discharge the duty and make report to the court, which report, or the report of a majority, made under their hands and seals, may be approved by the court and entered of record, and shall be final and conclusive on all the parties concerned." Rev. Code 1857, p. 454, art. 117.

It cannot be disputed that a partition, made by three commissioners, is as valid as if made by five; and that if the partition be made by three, a report made by a majority of the three, which would be two, is as valid and binding as if made by three.

In this case, it is not charged in the bill of complaint that there was any improper conduct on the part of the commissioners or of either of them; nor is there any proof to show that the shares, as allotted, were unequal in value or in quality. On the contrary, it is shown by the testimony that all of the shares were of about equal value; that the share allotted to Lewis Richardson was considered, in 1866, when the partition was made, of about equal value with that of the other heirs.

Where a partition has been made, as in this case, all

the parties being satisfied; where no fraud is charged or proved; where there is no inequality in the value of the respective shares, as is shown by the proof in this case; where several of the heirs have, since partition, sold their lands to other parties, who have entered into possession, and perhaps expended a considerable amount in improvements; where the share of the alleged debtor of complainant has been sold under execution, since partition, and bought by a party who claims it under said sale, would it be equitable to permit the complainant to come in and have allotted to him, one-seventh of the lands named and described in the pretended deed of trust, while the purchaser at the execution sale holds and claims the shares of Lewis Richardson and of Geo. B. Richardson, which purchase it is proposed to permit to remain untouched and unaffected by the result of this suit?

We insist here, as we did in the court below, that a partition may be made even by parol, if accompanied by livery of seizin, and a partition thus made would be binding and conclusive upon all parties.   Anders v. Anders, 2 Dev. (N. C.) 532; Jackson v. Harder, 4 Johns. 202; Folger v. Mitchell, 3 Pick. 399; Wildey v. Bonney's Lessee, 31 Miss. 644; 14 Wend. 619; 5 Ohio, 243; 2 Richard. 627.

In 2 Co. 68, and Cro. Eliz. 803, it is laid down as a general principle, that one joint tenant cannot prejudice his companion in estate, or as to any matter of inheritance or freehold; although as to the profits of the freehold, as the receipt of rent, etc., the acts of one may prejudice the other.   But it would, in many cases, tend to the prejudice, and even to the destruction, of the interest of one co-tenant, if the other might convey to a stranger his moiety in several distinct parcels of the land.   The owner of a moiety of a farm thus circumstanced, instead of one piece of land conveniently situated for cultivation, would, on a partition, be compelled

to take, perhaps, ten or even twenty different parcels interspersed over the whole tract, and separated by parts allotted to the several grantees. Suppose, two men hold jointly, or in common, land in a town sufficient only for two house lots, and that one of them could convey to ten persons his share in as many different portions of the land, or that so many executions could be levied on his share, the other original co-tenant would, on a partition, be compelled to take ten different lots or parcels not adjoining to each other, and each too small for any useful purpose, instead of one house lot, to which he was originally entitled as against the grantor. See Tookey's case, 10 Co. 68.

If one co-tenant has this right, the others, of course, have the same. Suppose then, that three or more persons hold in common a township of wild land, and that each of them, without regard to the others, should divide the whole into such lots as he thought proper, and sell his share in each lot to different purchasers. As the lines of the lots thus arbitrarily designated by the different owners would, perhaps, in no instance coincide, it is easy to see that a partition among the several grantees would become extremely difficult and inconvenient; and if we imagine a like case, with a greater number of original owners, and, consequently, a greater diversity in the boundaries of the lots so conveyed, a partition would become, perhaps, utterly impossible.

Whilst the right of one co-tenant to alienate any distinct portion of the land might be extremely injurious to his companions, the restraint on such alienation can seldom, if ever, prejudice the grantor. Suppose one of two co-tenants of forty acres wishes to sell ten acres, he may convey one undivided fourth part of the whole, and his grantee may, by legal process, have his share set off to him. This process of partition would be equally necessary if the conveyance had been

of a moiety of twenty acres taken out of the forty. There is, therefore, no additional trouble or expense, and the only difference is, that the grantor is prevented from selecting any particular portion of the whole tract out of which his grantee shall take his share, which is a right he could never claim or exercise in his own behalf while he continued the owner of the whole moiety. 12 Mass. 352, 353, 354.

The same principle is recognized in the case of Porter v. Hill, 9 Mass. 33–'6; and in that case it is held that one joint tenant cannot convey a part of the land holden in joint tenancy by metes and bounds to a stranger. Nor can one entering under such a conveyance be a disseizor of the other joint tenants, for one joint tenant can not be disseized by a stranger unless all are disseized; and the grantor was not disseized, as the grantee entered by his consent. The grantee in such a conveyance, therefore, gains no seizin, either by right or by wrong. 9 Mass. 33–'6. Such a conveyance, whether by deed or deed of trust, is null and void. 4 Kent Com. (8th ed.) 387.

This, as a legal question, has been decided by the court of last resort in several states of the Union; and, in pronouncing the opinion of the court in the case of Jewett's Lessee v. Stockton, the language is very emphatic and strong; and it is there said, that " the point is at rest, and not to be questioned." 3 Yerg. 492–'96. See also, upon this point, the case of Plinmon v. Heavenworth, 2 Conn. 244; Starr v. Heavett, 2 ib. 243; Mitchell v. Plasen, 4 ib. 495; Bartlett v. Harlow, 12 Mass. 342; Porter v. Hill, 9 ib. 34; Peabody v. Minot, 24 Pick. 329; Duncan v. Sylvester, 24 Me. 482; Griswold v. Johnson, 5 Conn. 363.

An estate held in coparcenary is where lands of inheritance descend from the ancestor to two or more persons. It arises either by common law or particular custom. By common law, as where a person seized in

fee-simple or in fee-tail dies, and his next heirs are two or more females, his daughters, sisters, aunts, cousins, or their representatives. An estate in coparcenary always arises from descent. At common law, it took place when a man died seized of an estate of inheritance and left no male issue, but two or more daughters, or other female representatives in a remote degree. 2 Chitty Blackstone, side page, 187; 1 Stephen Com. 319; 4 Kent Com. 385.

*Hudson & Nye*, for appellee.

The bill in this case was filed in the court below, by the appellee, to have a new trustee appointed to execute the trust deed, made part of the bill, on certain lands named therein, the original trustees being dead. There can be but little question upon the facts stated and admitted in the bill and answer, but that the appellee was entitled to that relief and that the decree to that extent, at least, was correct.

If the grantor had any interest upon which the deed could operate, or can now operate, it necessarily follows that a trustee must be appointed. But it may be in this, as in the court below, that appellants will insist that the trust deed was and is absolutely void, because the deed purports to convey the entire interest and title to the lands mentioned in the deed, when in law and in fact the grantor had only one undivided seventh interest in the lands so conveyed. This position is certainly untenable. I do not insist that the deed is operative upon the whole lands conveyed, but upon whatever interest the grantor had therein, however small, and must operate on such interest still, unless there has been a legal and valid partition of the general tract, embracing that in the deed and that outside of the deed, amounting to 3,000 acres, and by such a legal and valid partition, the trust deed, by operation of law, was transferred as a lien to the lands allotted to

the grantor under our statute.  Rev. Code of 1857, p. 320, art. 62.  It is certainly true that any person owning, or having an interest in, lands, although undivided, may sell or create a lien on the same, and that without livery of seizin, and whether to take effect *in presenti* or *in futuro*.  Rev. Code, 1857, p. 306, art 1. And whether the grantor attempted by his deed to pass a greater or larger right in the lands than he had himself, whatever right or interest he had therein passes by his deed.  Rev. Code, 1857, p. 307, art. 7; ib. p. 308, arts. 11, 12, 13 ; also p. 309, arts. 17, 18.

These provisions of our statute are plain, that whatever interest the grantor has in lands, present or future, absolute or conditional, he may convey absolutely or by mortgage, or in trust ; and whether he has the interest to the amount he assures to convey, whatever interest, and however small, he may have in the lands conveyed, it passes by the conveyance to the grantee. This rule applies to all sales, whether private or public, judicial or individual, and more strongly to individual and private sales than to any other, because the grantor in such cases is estopped by his own act.  The cases of Jewett's Lessee v. Stockton, 3 Yerg. 492; Porter v. Hill, 9 Mass. 34; Bartlett v. Harlow, 12 ib. 342; 2 Conn. 244; ib. 243; 4 ib. 495, are cited by appellants.

The Tennessee case is based upon the Connecticut and Massachusetts cases.  The Connecticut cases are based on the Massachusett cases, and the Massachusetts cases, admitting the common law rule to the contrary, are founded on a Massachusetts statute of 1783, requiring that upon levy made under execution, the judgment debtor's interest in the lands, if he has less than the whole, " shall be set off to him by metes and bounds" before sale.  We have no such statute in this state ; but, on the contrary, statutes expressly to the reverse, as above cited; and see also, Rev. Code 1857,

p. 531, arts. 290 and 291, in relation to sales by sheriffs and their conveyances of any interest the debtor may have in the lands, and for a full remedy and protection to all parties interested in the lands sold in any and all cases of the kind. Articles 61 and 62, Rev. Code, p. 320, were enacted to carry out and perfect such sales. The above cases cited by appellants can have no application in this state, and, indeed, except so far as they may rest upon the statute of Massachusetts, could hardly be regarded as law anywhere. Those were actions of ejectment, and it is clear that the tenant in common or joint tenant could not eject his co-tenant, in such cases, until partition among them.. Ours is no ejectment suit and we do not propose to eject any co-tenant or joint tenant. We do not propose to use this conveyance to the prejudice of the other parties, and the grantor is estopped by his deed. 4 Kent Com. (8th ed.), top page 387. Mr. Kent lays down the rule stated by the Massachusetts and Tennessee courts, and refers to them for authority; but the cases of White v. Sayre, 2 Ohio, 110, and Prentiss' Case, 7 Ohio, p. 129, § 2, hold the law otherwise. But it seems to me that all dispute upon this subject is put to rest by our statute, and I shall, therefore, dismiss this branch of the case.

The only other question is as to the validity of the partition made by the probate court. We contend that it was void.

John A. Miller, appellee, was a party interested in that partition. He held the legal interest of Geo. B. Richardson, and the latter only had an equity of redemption. Miller should have been made a party to the partition, but was not. He was interested, and our statute requires all parties interested to be made parties, and notified. Rev. Code, 316, arts. 48, 49. But it may be said, and it is, perhaps, true, that the law of the Code, page 16, on partition, does not apply

to this case, but only to cases where the parties are all adults, and to a proceeding before a judge, and not before a court. We must, then, turn to some other law on the subject, as this was a proceeding before the probate court, and not before the probate judge, and where the parties were not all adults, but some were minors. It can only be found on page 454, articles 117 and 118 of the Code, and Sheet Acts of 1865, section 1, page 142. By these laws, the persons interested must be made parties. No judgment is valid without notice to the parties. Jack v. Thompson, 41 Miss. 49. For this reason the partition was void as against Miller, the appellee.

But it was void for another reason. The court appointed neither three or five commissioners to make partition, as the law directs, but appointed four, as the record shows. The clerk issued his commission to five commissioners, inserting one not appointed by the court, as the commission shows; while the report of the commissioners on partition shows that only two of the persons named in the commission acted in the partition, and others, not appointed by the court or commissioned, acted in the partition. How those strangers got into the matter does not appear, nor could they legally do so, except by appointment of the court, which was not done. This of itself rendered the whole proceeding illegal and void. Code, page 454, article 117, says they must be appointed by the court. No others could act, and the action of others vitiated and rendered void the whole partition.

*D. Jones,* on same side.

Two questions were raised in the court below by appellant's counsel: 1. That the trust deed by Lewis Richardson was void because his interest in the lands conveyed was not ascertained by metes and bounds, and he had conveyed the whole in fee, when he was

was entitled to one-seventh only.   2. Because the partition made by order of Holmes county probate court, having been confirmed by said court, could not now be set aside.

As to the first question : Is the conveyance, by a coparcener, of a certain portion of land in which he is interested and entitled as a parcener, to trustees to secure a specific sum of money therein expressed, void?

Appellants rely upon the following decisions in the court below to maintain their position : Porter v. Hill, 9 Mass. 34; Bartlett v. Harlow, 12 ib. 348; Jewett's Lessee v. Stockton, 3 Yerg. 492; 4 Kent Com.

The two Massachusetts cases above referred to, decide that one joint tenant cannot convey a part of the land held in joint tenancy, by metes and bounds, to a stranger; and the Tennessee case decides that a tenant in common cannot do so.   Counsel for appellants seem to have overlooked entirely the wide distinction between the nature of estates in joint tenancy and tenancy in common, and those in coparcenary.

At common law, a joint tenant could not be compelled to make partition, unless by special custom. Co. Litt. 186 b, 187 a, § 290.   Com. Stat. 31 Hen. VIII, ch. 10, and 32 Hen. VIII, ch. 32, authorized joint tenants to make partition, but then by writ only. Co. Litt. 169 a.    Tenants in common could make partition at common law, either by deed or parol, with livery of seizin (Co. Litt. 169 a ; Jones' Devisees v. Carter, 4 Hen. & Mun. 189), but could not be compelled to do so.   2 Black Com. 194 ; Co. Litt.

Rights and remedies of parceners are much more extensive and comprehensive at common law than those of joint tenants, or even those of tenants in common.   Co. Litt. 186 a, 186, 187, § 289.

But, admitting appellants to be and claim as tenants in common with Louis Richardson, the grantor in the

trust deed to Miles and Adams, their relative position to each other is but little, if any, changed. If they are considered as tenants in common, they all take under their grandfather's will, at the same time, by the same title and the same estate or interest. Taking from their grandfather, although by devise, their relationship, title and interest in the estate assimulates more nearly to co-parcenary than tenancy in common; and, as heirs are favorites of the law (1 Black. Com. 450, and note 6), their rights and interests will be more liberally considered than those of mere purchasers or volunteers.

The modes of dissolving tenancies in common clearly indicate that the Richardsons were rather parceners than tenants in common. There are but two modes pointed out: 1. By uniting all the titles and interest in one person, by purchase or otherwise; and 2. By making partition. 2 Black Com. 194; Rev. Code 316, art. 48. By partition, Rev. Code, *supra*.

If one of two or more coparceners alienate, a tenancy in common is thereby created between the alienee and the other parceners, but the relation of coparcenary is not destroyed, but a mere severance of title. Co. Litt. 167 *b*, note 2; ib. 174 *b*.

The case of Jewett's Lessee v. Stockton, relied upon by appellant's counsel (3 Yerg. 492), seems to have been an entirely new case, and determined upon very little research and consideration, as acknowledged by the judge who delivered the opinion of the court; the case is wholly unlike the cases of Porter v. Hill, 9 Mass; and Bartlett v. Harlow, 12 ib; both of which involve the question of the rights and powers of joint tenants only at common law, and not those of tenants in common. In Porter v. Hill, *supra*, the court merely decide that a joint tenant cannot convey a part of the joint estate " by metes and bounds," and in Bartlett v. Harlow, they decide that an *elegit* cannot be extended

on a part of a joint tenant's estate, by metes and bounds, and this decision, too, based upon a statute of the state, as appears by the opinion of the court. Neither question involved in the case of Jewett's Lessee v. Stockton, 3 Yerg. *supra*.

But it must be observed that the cases above referred to are all proceedings at law for the recovery of real estate, whereas the one before the court is a bill in equity for the appointment of trustees in the place of those who are deceased, and to set aside a partition made by order of the probate court of Holmes county, as well as to enforce the trust created by the trust deed executed by Lewis Richardson. That the chancery court has the power to appoint new trustees, on the death of those appointed by the deed, it is presumed none will deny; if authority is required, 1 Com. Dig. 427, and references, will suffice.

That Lewis Richardson had power to grant and transfer whatever interest he had in the lands conveyed, is clearly established by 2 Com. Dig. 7; Rev. Code, 308, art. 11; and although he had but one-seventh interest in the lands conveyed, and conveyed the entire interest therein, yet, whatever interest he possessed passed by his deed as fully and completely as if conveyed *eo nomine*. A conveyance of the greater will always carry with it the lesser quantity, unless the latter be specially excepted.

The partition of probate court was made without any legal authority, and not binding on complainants: 1. Because they nor their assignors were parties; and, 2. Because it was not made by persons appointed and authorized so to do by the court.

Immediately upon the execution of the trust deed aforesaid, by Lewis Richardson, for the benefit of Miles and Adams, they became equitably entitled to whatever interest he had in the lands therein conveyed, and to whatever proceeding had by the co-claimants, for a

partition, they, Miles and Adams, or their trustees, should have been made parties. Story Eq. Pl., § 72, 76 *a*; 1 Dan. Ch. Pr. 182 and note. All parties interested in the subject-matter of the suit must be made parties. 1 Dan. Ch. Pr. 182 and note.

SIMRALL, J.:

John A. Miller brought this suit in order to realize the benefit of a deed in trust executed by Lewis Richardson, Jr., to secure a promissory note to Miles, Adams & Co. for $7,220, which they had transferred by indorsement to him.

Lewis Richardson, the debtor and grantor, conveyed in trust, for that purpose about 1,000 acres of land, described by sections and subdivisions thereof. The complainant states that William H. Richardson devised a large body of land in Holmes county, containing about 3,000 acres, to Lewis Richardson, Sr., and Sarah, his wife, for life, remainder to their children. The tenants for life have deceased, and the remainder vested in enjoyment in their children, the grand-children of the devisor, seven in number.

In March, 1858, Lewis Richardson, Jr., one of these children and co-tenants, executed the deed in trust in question, describing the land embraced in it as lots 6 and 7 in section 26; lots 2, 3, 6 in section 35, township ——, range ——, and so on, aggregating the above stated quantity. These lands were part of the 3,000 acres, of which Lewis Richardson, Jr., was owner of the undivided seventh. The deed purports to convey the enumerated parcels, or an entire title thereto, and not the undivided seventh interest of the grantor.

Several years subsequent to this transaction, at the suit of two or more of these joint tenants, in the probate court of Holmes county, partition was made of the 3,000 acres among the seven co-tenants, some of whom have sold and conveyed the shares respectively

allotted to them in severalty. The lot of another has been sold under judgment and execution.

The bill impeaches this partition as void, for several reasons, because an improper number (four) of commissioners, instead of three or five, were appointed to make the partition; because a stranger, not nominated by the court, participated in the decision and report; because the share allotted to Lewis Richardson, Jr., is inferior in value to the others; because the trustees, grantees of Lewis Richardson, were not parties nor notified of the proceedings.

The bill concedes that Lewis Richardson had only a title to an undivided seventh of the land mentioned in the deed; the several parcels whereof were assigned promiscuously in severalty to the co-tenants. The specific relief sought is a vacation and annulment of the partition, and the appointment of trustees to execute the deed, those named in the deed having deceased.

The appellants, defendants below, make an objection to the complainant's title to relief, which lies behind those taken in the bill to the partition proceedings, which, if well founded, suspended the consideration of the latter altogether. Joint tenancy is created by the same instrument, a will or a deed, and must have a unity of title and interest, as to nature, duration and quantity. Each tenant is seized of the whole and of every part; each may exercise all reasonable acts of ownership. Litt. 288; Co. Litt. 186; 4 Kent Com. 394.

The estate is destroyed by breaking up any of its constituent unities. If there be three tenants, and one convey his undivided interest to F., he becomes tenant in common with the other two, who as to each other remain joint tenants. Litt. 292, 294. The distinguishing feature of this estate was the right of survivorship, which could not be defeated by a devise by one tenant of his interest, unless the devisor sur-

vived, and then only by a re-publication of the will after survivorship had accrued. Co. Litt. 186 *b.*

Corparceners derive their estate by inheritance ; the interests may be unequal, as that of a daughter and the descendants of a deceased daughter, both taking by the same descent.

The 17th and 18th articles of the Code of 1857 have dispensed with the nice distinctions existing at the common law between the several sorts of joint estates, by converting joint tenancy into tenancy in common, unless a manifest intention to the contrary appears, and by making a quit-claim and deed of release operate to convey all the estate which the grantor has.

The common law estate of joint tenancy of the remaindermen, the grandchildren of the devisor, becomes under the statute an estate in common. The early writers have little to say as to the power of the joint tenant, coparcener or tenant in common, to convey as proposed in this deed in trust. They were familiar with conveyances of the undivided interest. If this deed can take effect at all, it would only be to pass such interest as the grantor had.

One joint tenant has not the same control over his estate as the owner of the whole estate. There are restrictions upon his right of alienation. This is an incident of his title. The titles of the several tenants may be derived from different sources, arise at different times. The special characteristic is, that there is only a unity of possession capable of being dissolved by partition. One tenant has no right to select a particular portion of the land, and claim to have it assigned to him on division. The possession is joint and equal to the whole tract. Severance is made on the principle of equality as to value and quantity. The restriction on the right of alienation, incidental to the title, extends no further than to deprive one of the power to so subdivide his estate by passing to an

alienee the whole, or less than the whole, of his interest to particular parcels, selected by metes and bounds out of the whole body of the lands. Sub-dividing his estate in this manner, he most seriously impedes and hinders a partition among the original tenants or their assignees. The effect of such con-veyances is to create new tenancies in common in separate parcels. The vendee's interest does not extend to the whole estate; nor would his right of partition reach farther than a separation of his interest in the several parcels from his co-tenants. The practical result, perfectly illustrating its injurious effects, is furnished by the conveyance in this case. The joint estate embraces about 3,000 acres, capable of sub-divisions into seven parts, of about 428 acres each. Lewis R. Richardson conveyed out of this about one thousand acres, designating the specific lots by the sub-divisions of sections. To make a partition so as to give the trustees what could in any event pass, would require a division between them and the other six tenants, so as to assign them one-seventh. That might make it impracticable to so partition the whole estate as that each tenant may have a useful and beneficial enjoyment of his part. Therefore, the principle as stated by Kent, 4 Com. 368, is, "that one joint tenant, or tenant in common, cannot convey a distinct portion of the estate by metes and bounds, so as to prejudice his co-tenants or their assigns, as against them such deed is inoperative and void. Numerous cases in the American reports recognize the rule and give it full force. Brown v. Bailey, 1 Metc. 254; Bartlet v. Harlow, 12 Mass. 384; Duncan v. Sylvester, 24 Me. 482; Jeffers v. Radcliff, 10 N. H. 242; McKay v. Welch, 22 Tex. 390; Prim v. Walker, 38 Mo. 98. In Philips v. Tuder, 10 Gray, 82, the co-tenant attempted to convey 64 rods, part of the lot of which he owned an undivided half, which could not be done.

Such deeds may operate by way of estoppel on the grantor, but will not, on the objection of the other joint owner, be permitted to stand.

If this conveyance were permitted to stand, with all the virtue claimed for it, it would break up the partition already made, and involve parties who by *mesne* conveyances acquired interests under it, in very great confusion. What would be the attitude of the purchasers of the several interests? Some of them by their acts have recognized the division. None of them have objected to it, or taken steps to vacate it. The relief sought by the complainant is a most manifest illustration of the fitness and wisdom of the rule, and proves that this is a fit case for its application.

We are of opinion that the complainant has no right to call in question, or interfere with the partition which has been made. Nor can he, under his deed of trust, subject to sale any of the lands named in the decree, which have been allotted to the other cotenants of Lewis Richardson. If, however, the whole, or any part of the lands embraced in the deed of trust were assigned in severalty to Lewis Richardson, he may, by the deed in trust, be estopped to deny title in the trustees as to them, and they may be sold under the deed. If third persons have acquired interests, however, we express no opinion in prejudice of their rights.

We think there was error in the decree of the chancery court; and, rendering judgment here, we sustain the separate demurrers of the defendants to the bill. As the complainant may have a right to satisfaction of his debt out of some of the lands conveyed, we remand the cause, to give complainant opportunity to amend his bill. If not amended, as we have indicated, the chancery court will dismiss the bill.