ELIZA SIMMONS, ET AL., APPELLANTS, VS. L. W. SPRATT, APPELLEE.

1. A will which provides that the residue of the testator's estate shall be equally divided between his children, but directs when the division is made, one of the children, naming her, shalt have her share set off to her in other kind of property than slaves, does not vest the legal title of the residue of his real estate in his executors, but vests it in the children as tenants in common until the partition shall be made.

2. Where a devisee, who is a tenant in common with other devisees, dies, leaving a will by which he devises his estate to his niece, the legal title to his undivided interest in the land devised to him, passes under his will to the niece.

3. Although an instrument executed by executors, and purporting to "set apart, distribute, and convey unto the estate of D. W. H., deceased," one of the devisees of the testator, lands described therein does not convey the legal title of the land to the niece or devisee of D. W. H., yet the purpose shown by this deed, (considered in connection with the will of the original testator, and that of D. W. H., devising his interest in the land to his niece, and proceedings instituted in the Probate Court by the executors for the partition of the land, in which proceedings the administrator *cum testamento annexo* of D. W. H., acted for his estate, bidding in certain lands for it under a system of bidding or so-called sales, adopted for ascertaining the value of the lands, all of which instruments and proceedings connect themselves,).is to set apart the lands described in it as the separate share which she as the person entitled to hold under D. W. H., should take in severalty.

4. Where a deed, ineffectual to convey a legal title, has been executed by executors, and when considered in connection with other instruments and proceedings, it shows an intent to partition the lands of the testator and to set apart certain lands as the share which the person entitled to the interest of a deceased son of the testator, should take in severalty, and after the lapse of about eleven years, the person so entitled, the niece and devisee of the son, mortgages part of the land included in the deed, her husband joining in the mortgage, and subsequently the mortgage is foreclosed and the land sold, a legitimate deduction to be drawn from the execution

of the mortgage is the acceptance and ratification by the niece of the partition intended by the proceedings, and in the absence of any showing to the contrary, it is to be assumed that she relied on the partition for her right to mortgage the land in severalty.

5.  A stranger to the common title cannot question the rightfulness of the exclusive possession of one tenant in common as against his co-tenants, and where there has been an actual partition, such stranger cannot make the irregularity or invalidity of the partition proceedings a defence to a recovery by the party to whom the exclusive possession of the land in question has been given. If the legal title to the entire part assigned in severalty did not pass, his title to the extent of his undivided interest is sufficient to maintain or assert his exclusive possession to the whole land assigned him, or any part thereof.

6.  Where there has been an actual partition of land among tenants in common, and one of them conveys by metes and bounds, a part of that assigned to him in severalty, the grantee has, as to the part so conveyed, the same rights against a stranger to the common title as his grantor had. Though the deed should prove void as to other co-tenants, it is good as against the grantor, and a stranger to the common title.

7   A bill of exceptions containing evidence of a witness who testified on a former trial of the same cause and has since died, is not admissible to prove of itself what his testimony on that trial was.

8.  Where there is error which cannot be said to be without injury, as it cannot be where testimony contributing to the weight of evidence on a point as to which there is conflict of testimony, has been erroneously admitted, the judgment must be reversed.

Appeal from the Circuit Court for Duval County.

The facts of the case are stated in the opinion,

*Geo. Wheaton Deans,* for Appellants.

*A. W. Cockrell & Son,* for Appellee.

BRIEF FOR APPELLEE.

1. The Court did not err in admitting the "ancient" deeds.

The only objection made was not to their execution, but their "materiality," and they were links in the chain of plaintiffs' title.

2. The record of the former trial, containing the bill of exceptions, prepared by counsel for appellants, was record evidence as to what Caulk, now deceased, swore to, and if not the *only* evidence of what Caulk did swear to, the appellants having by their bill of exceptions, solemnly asserted it to be a correct statement of Caulk's evidence, are estopped now from denying that it is a correct statement of Caulk's former evidence. The Judge's notes have been held sufficient. 1 Phillips on Evid., vol. 1, p. 400 and 401.

3. It is a well settled rule that when a deed refers to another deed or instrument, such other deed is to be deemed a part of it, as if recited in the latter deed. Perry vs. Holden, 22 Pick., 277.

4. The other assignments of error are disposed of by the decision of this Court. 20 Fla., 495.

But suppose the deed of distribution was inoperative as a conveyance, it certainly, construed in the light of the documents embodied in it by reference, operated as a partition among the co-owners. The petition of the executors of Isaiah D. Hart, for the order (49 of the record) sets up that the sale would result in a more equitable distribution of such of the lots as were not required to pay debts among those entitled thereto " by their bidding for their respective shares." The order of sale was duly made on this petition, and said order was duly executed. At the sale, the lot here litigated, was bid off by Caulk, who was entitled to bid, as the order and report both show, as the representative of the estate of Daniel W. Hart, under his will. The report of sale was duly made to and confirmed by the Court, which decreed that said executors *do make*

*distribution* among the legatees and others entitled under the will, etc., of the lands bid off at said sale by the legatees and representatives of legatees and by representatives of heirs ; and further, " that the executors aforesaid *do convey* to other persons the lands purchased by them at said sale." 53 of the record. In accordance with these orders, conveyances were made, and also, as operative between the co-tenants, instruments were executed "setting apart to the several co-owners the lots so bid in by them. The lots bid off by Caulk were set forth in the report of the executors. 66 and 67 of the record embrace the whole of block 134, lot 2 of which is in controversy. Caulk says he held this lot for Mrs. Dearing until it was sold at foreclosure sale. 123 of the record.

Even a parol partition followed by possession is valid at common law ; tenants in common might by parol make a valid partition if the same was executed by livery. Woods vs. Fleet, 36 New York, 499, and cases cited.

But the instrument called a deed of distribution, executed under an order of sale and sale, fixes the several allotments in each, and accomplishes a partition even if inoperative as a deed. Had there been no judgment of Court, and no writing, a parol partition is operative. 39 Geo., 559.

RANEY, C. J.: On the former appeal in this case, 20 Fla., 495, it was held that if the intended grantee in a deed is not named, he should be ascertained by description, so as to distinguish him from all other persons, and that a deed purporting to set apart, distribute and convey a described lot of land "to the estate of Daniel W. Hart," he being dead, does not pass the legal title to his niece, his devisee entitled to his estate.

The remaining question, therefore, as to title shown is, says the opinion, p. 500, whether plaintiff, Spratt, proved

title in Daniel W. Hart, because, if so, the testimony of
Caulk must be held to identify the land in question as being
devised by Daniel W. Hart to Lula Dearing whose interest
passed to Spratt under the foreclosure sale; and hence the
question is, whether Daniel W. Hart, or his devisee, took
such an estate under what is here called the deed of dis-
tribution of the executors of Isaiah D. Hart, as can sustain
an action of ejectment. And again, after stating the reci-
tals of the deed, it is said, p. 504: "The question is, does
a deed of conveyance by the executors of Isaiah D. Hart,
(who, under his will and an order of the court, are author-
ized to distribute Isaiah D. Hart's estate,) conveying and
setting apart this lot to the estate of Daniel W. Hart, vest
such title in the devisee of Daniel W. Hart who alone under
the terms of his will could acquire it as would enable such
devisee to maintain ejectment. It is insisted that these
terms passed no estate, that the legal title here is still in
the executors of Isaiah D. Hart, if it was there before this
deed."

In response to these questions, it is observed (pp. 504,
505,) that the description of the grantee as "the estate of
Daniel W. Hart" in the deed, is too vague and uncertain
to constitute a competent grantee at law; that there is no
grantee by name or otherwise, and that the Court was
without the most remote reference to the will of Daniel W.
Hart or anything by which it could be contended that his
niece, Mrs. Dearing, was the grantee in the deed from the
executors of Isaiah D. Hart, and that the will of Isaiah D.
Hart was not in evidence to identify his legatees or devi-
sees; that the grant was to *an estate*, without definition of
this expression, and that the executors, (meaning of course,
those of Isaiah D. Hart,) connect nothing with the descrip-
tion, by way of reference to enable identifying evidence to

come in; that it cannot be said that the word "estate" refers to the devisee under Daniel W. Hart's will, and for the reason that there is nothing to connect the deed and the will, as there was in Webb vs. Den, 17 How., 579, where the deed was to the "legatees and devisees of the late Anthony Bledsoe," and it was concluded that Spratt had acquired no legal title under his mortgage purchase "for want of legal title in the mortgagor," Mrs. Dearing.

This Court had before it, when it made the above decision, the "deed of distribution of the executors of Isaiah D. Hart," of June 16, 1866, and the will of Daniel W. Hart executed August 15, 1865, and admitted to probate on the 15th day of the following December, by which he divised his property to his niece, then Miss Lula Spear, and requested his executors to act as trustees of the same and keep it in their possession until she should become of age, and then to deliver it to her personally. On the subsequent trial in the Circuit Court, the plaintiff, Spratt, introduced, in addition to these instruments, the will of Isaiah D. Hart, and the proceedings in the Probate Court upon which the deed of his executors purports to be founded.

The will of Isaiah D. Hart was executed March 20, 1861, and admitted to probate the 27th day of the following September, and after making special bequests and devises, provides by its ninth item as follows: "All the remainder of my estate to be equally divided between my children, Ossian, Laura, Daniel, Julia and Mary, except such as I have already given and bequeathed in this my last will and testament, or any that I may hereafter by codicil or codicils made by me."

By a codicil made on the 10th of April, 1861, he directs that his daughter Laura have her share of the estate, when it is divided, set off to her in other kind of property than

slaves. The tenth item directs that his estate be settled up as soon as it can be done without loss or sacrifice of property, and without law if possible, "anything that my executors cannot settle, leave it to arbitration, without the interference of clerks, sheriffs, lawyers or marshals." * * *

The Probate Court proceedings upon which the "deed of distribution" is founded, are in substance, as follows: The executors of Isaiah D. Hart, filed a petition on the 16th day of November, 1865, showing, among other things, some indebtedness of the testator, and alleging that there was a large number of vacant town lots in the city of Jacksonville, for which there was great demand, and that by a sale of these lots, money could be raised to meet all the liabilities of the estate, and the balance be more equitably distributed amongst the legatees by their bidding for their respective shares, than by any method of distribution, and that a large part of the real estate belongs, under the will, to three minors to be distributed to them, and praying an order of sale. The Judge of Probate being absent from the county, the Clerk of the Circuit Court, acting under the statute of January 8, 1848, chapter 154, made an order on the day the petition was filed, reciting that thirty days' notice of the application had been given in a newspaper published in the city, and adjudging that the executors should sell the real estate mentioned in the petition. On the 16th day of January, 1866, the executors filed a report to the effect, that after advertising the sale of the lands for thirty days, in a newspaper published in the city, they proceeded on the first Tuesday in the said month to sell the same; that Laura Farrer was one of the legatees, and a resident of South Carolina, and died, as they were informed and believed, four days after the death of the testator, leaving two minor children, George and Laura, residing

with their father in that State. That the father was not present at the sale, and that the only way in which the interests of the children were represented, was that Halstead H. Hoeg, the Mayor of Jacksonville, a man as well informed as to the value of town lots there as any other man, and one Hardy W. Phillips, an old citizen, also well qualified, undertook, at the request of the executors, to represent the interest of the children at the sale, and that they bid off for them certain lots. The report also represents that Daniel W. Hart died in September, 1865, and that William Caulk, administrator, with the will annexed, bid off for his estate certain lots, and that William Caulk, the husband of Julia, bid off for her certain lots, and for himself certain other lots. That certain lots were purchased by different persons, and further, that the executors bid off for the estate certain lots. The numbers of the respective lots and the price at which they were bid off, are stated in the report; and the prayer of the report is that an order be made for them "*to make distribution*" of the land " so bid off at said sale by said legatees, and by representatives of legatees ; and by representatives of heirs and estates of legatees, amongst said legatees and heirs and legal representatives of deceased legatees, according to the values ascertained at and by said auction sale, having due regard to the equal distribution thereof contemplated and required by the last will and testament of Isaiah D. Hart," and to *convey* to other purchasers the land bid off by them upon payment of the purchase money. On the 18th of January, an order was made by the Judge of Probate, Aristides Doggett, for the faithful application of the moneys arising from the sales, in the payment of all debts of the estate, and " that the executors *make distribution* among the legatees and others entitled under the will, etc., of the lands bid off at said sale by the

legatees and by representatives of legatees and by representatives of heirs," and " convey to other persons the lands purchased by them."

The " deed of distribution," after reciting the above order of November, 1865, as one made to sell the vacant town lots for the purpose of paying the debts of the deceased, and distributing the estate more equally among the legatees mentioned·in the last will and testament, and the report of sale, and the order of the Judge of Probate therein, reads thus : " Now, know ye, that we, Ossian B. Hart and Ozias Buddington, executors of the last will and testament of said Isaiah D. Hart, deceased, by virtue of said last will and testament, and of said order and decree of said Court of Probate, do hereby set apart, distribute and convey unto the estate of Daniel W. Hart, deceased, who was one of said legatees, the following described lots and parts of lots," describing them. The lands are all those reported by the executors to have been bid off by Caulk, administrator, for the estate as above set out, as well as some of those reported to have been bid off by the executors, the lot in controversy, lot No. 2 of block 134, being included, as in fact was the entire block in the former class.

In view of the new features introduced into the case since the former decision of this Court, it is not necessary to say anything about the incapacity of the so-called deed of distribution to *convey a legal title* to Mrs. Dearing.

The legal title to the land in controversy is shown to have been in Isaiah D. Hart at the time of the execution of his will, and does not appear to have been parted with by him prior to his death. His will disposed of the residue of his estate, of which the land in question was a part, in the manner indicated above. It is said in the opinion in the former case, as is shown above, that the legal

title is still in the executors of Isaiah D. Hart, if it was there before the deed of distribution. Whether it was ever in them is to be answered by the will of Isaiah D. Hart, which was not before the Court in the former case, and the law applicable thereto. Had he died intestate as to this land the legal title would have descended to his heirs, but he died testate as to it. The law is that the legal title does not pass by the will to the executor unless there are express words to that effect, or such title is essential to the performance of the trust imposed on him. Redfield on Wills, vol. 3, p. 137, note 1. In Williams on Executors, p. 725, 6th edition, it is said that a devise of land *to executors to sell* passes the interest in it, but a devise that *executors shall sell the land,* or *that land shall be sold by the executors,* gives them but a power; and in a note on the same page we find that *authority* to executors in a certain contingency to sell real estate and divide the proceeds among certain persons, does not vest the estate in the executors, but simply confers on them a power, and the estate passes at once to the heir, if not devised, or to the devisee if devised, subject only to the execution of the power. Marsh vs. Wheeler, 2 Edwards' Chan., 155; Herbert vs. Tuthill, 1 N. J. Eq., (Saxton), 141; Dabney vs. Manning, 3 Ohio, 321; Martin vs. Martin, 43 Barbour, 172; Vernon vs. Vernon, 53 N. Y., 351; Dunn vs. Keeling, 2 Dev. (Law), 283; Haskell vs. House, 3 Brevard, 242; Doe vs. Shotter, 8 Ad. & E., 905, (1838); Doe vs. Humfray, 6 Ad. & E., 206. The Pennsylvania decisions to the contrary are the result of a statute enacted in 1792 providing that where a naked power to sell is given to an executor he should have the same interest in the land as if it was devised to him to be sold. Allison vs. Wilson, 13 Serg. & R., 330; Morrow vs. Brenizer, 2 Rawle, 184; Hannah vs. Swarner, 3 Watts, & S., 223.

The effect of the devise made by the above item of Isaiah
D. Hart's will was to vest the title of the real estate in his
children as tenants in common until there should be a par-
tition, and this is so independently of our statute, (Sec. 11,
page 47, McClellan's Digest), abolishing survivorship in
joint tenancies. Freeman on Cotenancy and Partition, Sec.
23; Heathe vs. Heathe, 2 Atk., 121; Stewart vs. Garnett,
3 Simon, 398; Briscoe vs. McGee, 2 J. J. M., 370; Emer-
son vs. Cutter, 14 Pick., 114; Denn vs. Gaskin, Cowp., 657;
Morley vs. Bird, 3 Vesey, 630; Goodman vs. Winter, 64
Ala., 410.

Daniel W. Hart, one of the devisees, died more than four
years subsequently to his father Isaiah, leaving the will by
which he devised his estate to his niece. There is nothing
in this will to raise a doubt that it transferred to her the
interest with the title thereto, which he had in his father's
estate. The request that his "executors act as trustee of
the property, and keep it in their possession until she be-
comes of age, and then deliver it to her personally," has no
effect upon the transfer of the title to her.

It is evident that one purpose of the probate proceedings
was to distribute the real estate among the surviving devis-
ees and those entitled to the interests of the devisees who
had died since the testator, and that the public sale was
adopted as a mode of ascertaining the value of the lands to
the end that they should be "equally divided" as contem-
plated by the will. The language of the order of the Court
does not seem to have contemplated a *conveyance* of land to
anyone except such purchasers as were strangers to the es-
tate, but only a distribution or equal division of the land
under the will, or an ascertainment of the share or portion
that each devisee, or his or her representative, or represent-
atives, should hold in severalty, and a setting apart of the

same to them, and that no technical conveyance was necessary, but that upon each share being identified and the division actually consummated, the legal title thereto in severalty would vest in a living devisee by virtue of the devise, and in the heirs or devisees of those deceased by or through such original devise, and the law of descents, or the former will of a deceased devisee. Goodman vs. Winter, 64 Ala., 425, 426.

In view of the fact that the will of I. D. Hart shows that D. W. Hart was a child and devisee, and that in the probate sale proceedings William Caulk, the administrator *cum testamento annexo* of Daniel W. Hart, represented the latter's estate in the manner indicated in the report of the sale, all of which instruments and proceedings, and the deed of distribution, connect themselves, it is clear that the purpose of the deed, considered with reference to the other proceedings, was to set apart the lands described in it as the separate share which the person or persons entitled to hold under Daniel W. Hart should take in severalty. The foreclosure proceedings contained in the record further show that about eleven years after the date of the deed of distribution, the devisee of Daniel W. Hart, and her husband, Mr. Dearing, mortgaged the lot in question and nineteen other lots, with parts of two lots, covered by the deed of distribution, and that upon the maturity of the indebtedness secured thereby, the mortgage was foreclosed and the mortgaged property sold to appellee, the master's deed to him bearing date January 16th, 1879. A legitimate inference to be drawn from the execution of this mortgage is acceptance and ratification by Mrs. Dearing of the partition intended by the proceedings.

Whether or not the partition proceedings were originally legal as against an attack by either of the parties beneficially

interested therein, or whether or not a formal deed of con-
veyance was essential to vest the title of the lands in sev-
eralty in the devisees of I. D. Hart, or the heirs or a devisee
of those deceased, and what effect the lapse of time may
have had on any original right to assail the distribution, are
questions we need not answer. An entirely legitimate in-
ference, from the partition proceedings and the mortgage,
and the foreclosure proceedings, is that Mrs. Dearing rati-
fied and accepted the partition. In the absence of any
showing to the contrary it must be assumed that she relied
on this partition for her right to mortgage the land in sev-
eralty. Possession under these partition proceedings held
by Caulk, as administrator of Daniel W. Hart, or otherwise,
for her, was in fact possession in severalty, and in view of
the ratification shown by the mortgage, must be regarded
as held for her benefit. Such exclusive possession as
against other devisees cannot be assailed by a stranger. As
against a stranger, a tenant in common or joint tenant is
entitled to the possession of the entire joint premises or any
part of them. Freeman on Cotenancy and Partition, Sec.
343, 344; Robinson vs. Roberts, 31 Conn., 145; Sharon vs.
Davidson, 4 Nev., 416; Hibbard vs. Foster, 24 Vt., 542;
Stark vs. Barrett, 15 Cal., 361; Touchard vs. Crow, 20 *Ibid*,
150; Hart vs. Robertson, 21 *Ibid*, 346; Rowe vs. Bacigal-
luppi, *Ibid*, 633; Smith vs. Starkweather, 5 Day, 207; Bush
vs. Bradley, 4 *Ibid*, 298; Hardy vs. Johnson, 1 Wall., 371.
Where there has been an actual partition, though by parol,
it must follow from the above principle, that a stranger to
the common title cannot make the irregularity or invalidity
of such partition proceedings a defence to a recovery by the
party to whom the exclusive possession of the land in ques-
tion has been given by such proceedings. This view is
strengthened by the disposition of the courts to maintain

actual partition as between the parties, even where such partitions are held to be within the statute of frauds. Frederick vs. Frederick, 31 W. Va., 566; Kennemore vs. Kennemore, 26 So. Ca., 251; Moore vs. Kerr, 46 Ind., 468; Bruce vs. Osgood, 113 Ind., 360; Wright vs. Jones, 105 Ind., 17; Shepard vs. Rinks, 78 Ill., 188; Brazee vs. Schofield, 2 Wash. Ter. 209; Baker vs. Prewitt, 64 Ala., 531; Yarborough vs. Avant, 66 Ala., 526; John vs. Sabattis, 69 Me., 473; Nave vs. Smith, 95 Mo., 596; Hazen vs. Barnett, 50 Mo., 206. If the legal title to the entire part assigned in severalty did not pass, he still has his legal title to the extent of his undivided interest; (Tomlin vs. Hilyard, 43 Ill., 300; Buzzell vs. Gallagher, 28 Wis., 678;) and this title is surely sufficient to maintain or assert his exclusive possession to the whole land assigned him or any part of it, as against a stranger; and where there has been a conveyance of a part of such lands by meets and bounds, or other like description, the grantee thereof has as against a stranger the same right as to the part so conveyed to him. The fact that he might as against the co-tenants of his grantor not be entitled to the land on a new partition, is no reason why he should not enforce and enjoy the same rights against a stranger which his grantor could if there had been no conveyance. Admitting the deed to be void as to other co-tenants, it is yet good as against the grantor. Boston Franklinite Co., vs. Condit & Torry, 19 N. J., (Eq), 401; Duncan vs. Sylvester, 24 Me., 482; Gibbs vs. Swift, 12 Cush., 393; Richardson vs. Miller, 48 Miss., 311. That a stranger to the common title can have any superior right to the grantor, or that he should be permitted to question an actual exclusive possession which does not appear to have been questioned by the other tenants in common, we do not see the reason for. He is confined to a superior title or one by adverse possession,

and cannot raise or found a defence upon questions affecting no one but tenants in common as between themselves. Freeman on Cotenancy and Partition, Sec. 200, 204; Gates vs. Salmon, 46 Cal., 362; Wade vs. Deray, 50 Cal., 376; Glasscock vs. Hughes, 55 Texas, 461.

II.   In the course of the trial the Court permitted plaintiff to introduce as evidence the bill of exceptions taken on the first trial of the cause, and purporting to contain the evidence of Caulk mentioned above and who had died since the first trial, to prove to the jury what Caulk had testified to on the former trial.   The law, as we find it, does not justify this action of the Court.   Notes of the testimony taken by a Judge on the trial are not *per se* evidence to establish what was sworn to by a deceased witness.   They can only be resorted to as a memorandum to refresh his memory the same as in the case of any other witness.   Miles vs. O'Hara, 4 Binney, 108; Schafer vs. Schafer, 93 Ind., 586; Asher vs. Mitchell, 9 Ill., App., 335; People vs. Chung, Ah Cheu, 57 Cal., 567.   The evidence of a witness as set forth in a bill of exceptions is in itself nothing more than a certificate of the trial Judge or a subsequent statement by third parties, without the sanction of an oath, of what the testimony was, and it is not admissible *of itself* to prove the testimony of a deceased witness.   Greenleaf on Evidence, Sec. 166; Breeden vs. Feurt, 70 Mo., 624; Kirk vs. Mowrey, 24 Ohio St., 581; Davis vs. Cline, 96 Mo., 40; Jaccard vs. Anderson, 37 Mo., 95; Scoville vs. H. & St. J. R. Co., 94 Mo., 86; Robinson vs. Lane, 22 Miss., (14 S. & M.) 161; Shotwell vs. Hamblin, 23 Miss., 156; Dwyer vs. Rippeltoe, 72 Texas, 520; Reed vs. State, 81 Ga., 760; Carpenter vs. Tucker, 98 N. C. 316; Stern vs. People, 102 Ill., 540; Mott vs. Rumsey, 92 N. C., 152; Pillsbury &c, Ry Co., vs. McGrath, 115 Ill., 172; Lipscomb vs. Lyon, 19 Neb., 511;

Mitchell vs. State, 71 Ga., 128; State vs. Fitzgerald, 63 Iowa, 268; Helper vs. Mount Carmel, &c, 97 Penn. St., 420; Costigan vs. Lunt, 127 Mass., 354; 2 Phil. on Ev. (2d Ed.) p. 181-2.

In view of the admissibility of a bill of exceptions in aid of memory under the above authorities, there can hardly be any difficulty in proving by living witnesses, under oath, who heard Caulk testify, what his testimony was. Assuming that an affirmative showing of inability to prove the testimony of a deceased witness, otherwise than by a bill of exceptions *per se*, will under any circumstances render such proof admissible, the fact is that no such showing is made by the record before us, and hence nothing further need be said on the point.

For this error the judgment must be reversed, as in view of the testimony of Caulk, thus introduced, both in regard to the possession under the deed of distribution, and as contributing to the weight of testimony against Simmons on the issue of title in Robinson by adverse possession, upon which point there is conflict of testimony, the error cannot be said to be one without injury. Smiths vs. Shoemaker, 17 Wall., 630, 639; Deery vs. Cray, 5 Wall., 795; Moores vs. National Bank, 104 U. S. 625, 630; Gilman vs. Higby, 110 U. S., 47, 50.

The judgment will be reversed and the cause remanded for proceedings not inconsistent with this opinion.