## WORTHINGTON *v.* STAUNTON *et al.*

Decided April 17, 1880.

1880
Special Term.

Worthington
v.
Staunton *et al.*

1. A decree between co-defendants can be based only upon the pleadings and proofs between the complainants and defendants.

2. Where a case is made out between co-defendants by evidence arising from pleadings between the complainants and defendants, a court of equity should render a decree between the co-defendants; but where there are no such pleadings, a court of equity cannot render a decree between the co-defendants.

3. Where an appeal has been allowed from a whole decree, the whole of such decree may be reviewed by the Appellate Court, and any error therein, to the prejudice of any of the parties to the suit complaining thereof, whether appellants or appellees, may be corrected.

4. A co-tenant may convey at his pleasure his undivided interest in all the lands held in common without the knowledge or consent of his companions in interest; and the effect of the deed is to make the grantee a tenant in common in the land with all the rights and obligations with reference thereto of his grantor.

5. A deed from a co-tenant of a part of the land held in common, describing it by metes and bounds, cannot in any way operate to the prejudice of the other tenants in common. They have the right to have the land partitioned unaffected by such deed.

6. But in a partition in such a case a court of equity will allot the portion so conveyed to the purchaser thereof, if it can be done without prejudice to the rights of the other co-tenants.

7. Such a deed will become operative and pass the land to the grantee by metes and bounds, if the other tenants in common, before partition, confirm and ratify it, and after partition, if that portion is allotted to the purchaser thereof; and in either case such deed will be binding on both the grantor and grantee.

8. If a tenant in common convey with covenant of general warranty a part of the common subject by metes and bounds, and upon partition afterwards made a material part of the land so conveyed is allotted to other tenants in common, so that the purchaser does not obtain the substantial inducement to his contract of purchase, upon the prayer of such purchaser a court of equity will cancel and annul such deed, and place the parties *in statu quo.*

Appeal from and *supersedeas* to a decree of the circuit court of the county of Kanawha, rendered on the 11th day of January, 1878, in a cause in said court then pending, wherein Henry Worthington was plaintiff and J. G. Staunton and others were defendants, allowed upon the petition of said Worthington.

Hon. Joseph Smith, judge of the seventh judicial circuit rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

At August rules, 1867, of the circuit court of Kanawha county, Henry Worthington filed his bill in chancery, in which he alleged, that on the 28th day of August, 1857, Lewis Ruffner and wife conveyed to John P. Hale, Henry Worthington and Hugh P. Longmore, for the sum of $9,000.00, of which sum $1,500.00 was paid in cash, and for the residue time was given, the undivided moiety of a tract of one thousand six hundred and forty-six acres of land in the said county of Kanawha, described in the deed filed with the bill as exhibit "A;" that afterwards, on the — day of October, 1858, the said Hale conveyed his interest therein to said Worthington and Longmore, which deed is exhibited with the bill ; that one J. H. Saulsbury had an equitable interest in said tract of land ; that the plaintiffs, Longmore, Hale and Saulsbury, conveyed said tract of land to Richard H. Collins by deed dated April 19, 1859, which deed is also exhibited with the bill ;—that in said deed a lien was reserved to said Worthington and Longmore for the purchase-money ;—that the pur-

chase-money remaining due and unpaid is $6,333.33⅓, evidenced by four notes executed by said Collins to Worthington and Longmore, with interest thereon, and the further sum of $14,402.49, due by twelve notes executed by said Collins to Longmore, Hale & Co , with interest thereon;—that said Longmore and the said Longmore, Hale and Saulsbury afterwards assigned said notes and all their interest therein to the plaintiff;— that after the sale of said land to Collins, the said Collins sold one hundred acres thereof to J. Galusha Staunton for the sum of $5,000.00, and executed an agreement to convey the same to said Staunton : the said article of agreement is also exhibited with the bill ;—that by deed bearing date on the 6th day of September, 1859, which is recorded in Kanawha county, the said plaintiffs, Longmore and Saulsbury, confirmed the title to said one hundred acres to the said Staunton, but retained a lien in said deed for the purchase-money due thereon from Staunton, and released it from all other liens : a copy of said deed is exhibited with the bill ;—that a large part of said purchase-money, amounting with interest to $4,500.00, still remains due and unpaid, and by virtue of said deed and agreement a lien rests upon said land for the said purchase-money ;—that soon after said Staunton purchased said one hundred acres, he and his two brothers, J. M. Staunton and A. C. Staunton, took possession thereof and erected extensive and valuable coalworks thereon, and have occupied it ever since ; and that the said two brothers at the time of the said purchase had an interest in said tract.

The bill further represents that the land had been sold for taxes and bought by one Morrison, and charges, after stating in full the circumstances, that said tax-deed is void and should be set aside. The bill makes the proper parties defendant thereto, and prays that the land sold to Collins may be sold to pay' the purchase-money due thereon, and that the one hundred acres sold to Staunton may be sold to pay the purchase-money due thereon, and for general relief.

The deed from Worthington and others to Collins contains a covenant of general warranty.

Exhibit " E," referred to in the bill as a deed of confirmation is as follows :

" *Know all men by these presents,* That we, Henry Worthington, of Covington, Kentucky, and Hugh Paul Longmore and James H. Saulsbury, of Newark, Ohio, having sold and conveyed to Richard H. Collins, of Covington, Kentucky, with covenant of warranty by deed dated 19th April, 1859, and recorded on the 10th day of August, 1859, in the county court clerk's office of Kanawha county, Virginia, certain lands in said county of Kanawha, known as a portion of the Work and Curran tract, and further described in said deed to said Collins, reserving unto ourselves a lien upon said lands to secure the payment of a portion of the purchase-money thereof; and whereas certain other judgment-liens and encumbrances were resting upon said lands at the time of said sale, but which were then unknown to us; and furthermore whereas said Collins has contracted to sell to J. Galusha Staunton, of the State of New York, a portion of said land, as described in the annexed contract executed by and between said Collins and said Staunton, and is unable to make title to said land on account of said liens and encumbrances above mentioned. Now, therefore, in consideration of the above facts, and of one dollar to us in hand paid, the receipt whereof is hereby acknowledged, we do hereby jointly and severally approve, ratify, confirm and guarantee said contract between said Collins and said Staunton in all its terms and conditions, and agree to protect said Collins against any loss, cost or damage, which he may suffer in consequence of our failure to make said title good ; and furthermore we hereby agree to proceed immediately to perfect title to said land above referred to and intended to be described, and to relieve the same of all liens and encumbrances thereon, except said lien for the purchase-money from said Collins to us,

and to perfect title and remove said liens by the 1st day of February next; and further, upon the payment to Henry Worthington for us by the said Staunton or his assignee of the purchase-money and interest, as agreed in said contract, that we, the said Henry Worthington, Hugh Paul Longmore and James H. Saulsbury, will release said one hundred acres of land from the lien for purchase-money from said Collins, and that each payment so made shall be applied for that purpose.

"In witness whereof we have hereunto signed our names and fixed our seals, at Newark, Ohio, this 6th day of September, 1859.

> "H. WORTHINGTON, [Seal.]
> "H. P. LONGMORE, [Seal.]
> "J. H. SAULSBURY, [Seal.]

"Witnesses—William B. Arven, Charles H. Rifler, J. M. Staunton."

The said agreement was acknowledged before a notary public on the same day.

The deed from Lewis Ruffner and wife, exhibit "A" with the bill, conveyed to Hale, Worthington and Longmore, "the one undivided half-part of one thousand six hundred and forty-six acres * * * being part and parcel of a tract of land heretofore conveyed to Lewis and Daniel Ruffner by the commissioner of delinquent and forfeited lands as part and parcel of the Work and Curran tract of thirty thousand acres, the whole of said tract conveyed as aforesaid to the said Lewis and Daniel, was supposed to contain three thousand five hundred and eighty-three acres, but by recent measurement contains three thousand two hundred and ninety-two acres, and was designated by said commissioner as lot number two the land intended to be conveyed by this deed being the one undivided half-part of the whole of said tract *which lies south of the red line* on the plat; and then describes the land by metes and bounds. The deed to Collins, contains the same recitation as to its *lying south of the red line.*

1880
Special Term.

Worthington
v.
Staunton et al.

On the 6th day of April, 1868, J. G. Staunton, J. M. Staunton and A. C. Staunton filed their joint answer to the bill of complaint, to which answer the plaintiff replied generally. The part of said answer which it is material to consider is substantially as follows: That after the purchase of the one hundred acres of Collins, the said J. S. Staunton assigned the said contract to I. B., E. S. and H. Coleman, who subsequently assigned the same to the respondents jointly; that it is true that complainants, Longmore and Saulsbury, confirmed and ratified said contract and guaranteed its performance in all its conditions and covenanted to hold and save the said Collins harmless from any loss he might suffer in consequence of the failure of complainants, Longmore and Saulsbury, to make a good title to said land, and to remove certain liens and encumbrances resting thereon; that at the time the contract with Collins was made, there were numerous and complicated liens and encumbrances resting upon said land, which prevented the said Collins from making a good title to respondents, and also prevented said complainants, Longmore and Saulsbury and Hale, from making title to said Collins; that one class of said encumbrances were numerous docketed judgments against said Hale, which were liens upon his interest in said land under the deed from Ruffner, and said judgments are still wholly unsatisfied; that another encumbrance resting on said land is the vendor's lien retained in the deed from Ruffner to the complainant and others; that said lien has never been discharged or released, but still subsists against all the said land sold to Collins, including the said one hundred acres; they are not advised of how much of the said purchase-money is yet due Ruffner, but aver that they were compelled to pay off and take an assignment of one of the notes or bonds for the purchase-money due Ruffner, to prevent their property from being sold at the suit of John B. Smith, who had by assignment obtained said note or bond from Ruffner.

Respondents further aver, that at the time of the con-

veyance by the said Hale, Worthington, Longmore and Saulsbury to Collins, the said grantors owned only an *undivided moiety* of one thousand six hundred and forty six-acres of land, and the said Collins at the time of his contract with respondent, J. G. Staunton only had title to the same *undivided moiety*; that in said contract he covenanted to convey one hundred acres by certain metes and bounds particularly set out in said contract; that subsequent to said contract the said one thousand six hundred and forty-six acres of land have been partitioned in a chancery suit brought by *Lewis Ruffner* v. *Corwin, Finnell, et al.*, lately pending in this court; and in said partition the most valuable portion of the said one hundred acres has been set off and assigned to said Corwin and Finnell, or to their grantees, and said partition has been confirmed, and the deed made and recorded in accordance therewith, a copy of which is exhibited with the answer; that by said partition that part of said one hundred acres which contained the most valuable and abundant deposit of cannel coal has been set off and conveyed to other parties than to said Collins or his grantors, and it is now out of the power of the said Collins to comply with said contract and perfect the title to said one hundred acres, and it is also out of the power of said complainants, Longmore and Saulsbury, to ratify and confirm said contract according to their covenant.

Respondents further aver, that it was the cannel coal alone that made the said one hundred acres of any value to them, or that afforded any prospect of receiving back the large expense, of about $50,000.00, to which they were put in erecting improvements for the purpose of manufacturing oil from the cannel coal on said tract; —that by the loss of the most valuable part of said coal land, as aforesaid, their oil works are rendered comparatively worthless;—that Collins covenanted to make a good and sufficient warranty deed for said one hundred acres, and to remove all liens and encumbrances from said land by the 1st day of February, 1860, and no part

of the purchase-money was to be paid by them, until such liens and encumbrances were removed; and said Collins further covenanted that in case of his failure to perfect the said title to the one hundred acres, and to remove said liens and encumbrances, and make such warranty deed at the time aforesaid, the measure of damages, in any action brought for such failure on said contract, should be the purchase-money paid by the respondents, the value of all improvements erected by respondents and a reasonable compensation for the obstruction of their business, less the reasonable value of the coal used by respondents;—that on the 6th day of September, 1859, the said complainants, Longmore and Saulsbury, also entered into a contract, by which they jointly and severally ratified, approved and confirmed and guaranteed the contract of Collins aforesaid in all of its terms and conditions, and covenanted to protect said Collins against all loss he might suffer in consequence of their failure to make said title good;—that after waiting nearly eight years for said Collins and said complainant and his joint obligors to fulfil their contract, and remove all liens and encumbrances from said land, and they still failing and neglecting so to do, *and after it became impossible from the result of the partition suit aforesaid for them to perfect their title to said one hundred acres* according to their contract, respondents brought a suit and recovered a judgment against said Collins, for breach of said contract, in the circuit court of Kanawha county, at the December term, 1867, for $45,000.00, and obtained an order of sale upon the attachment in said suit of said Collins's interest in the land purchased by him of Worthington, Hale, Longmore and Saulsbury subject to complainants' rights and equities therein : the said record of the suit at law is exhibited with the answer.

Respondents aver, that no part of said judgment has been paid, and that complainant by his contract, which was joint and several, confirming, ratifying, approving and

guaranteeing the contract of Collins in all its terms and conditions, and agreeing to save Collins from all loss and injury, by his failure to make title to said land is equally liable with said Collins for the judgment aforesaid, and that a court of equity will compel the complainant to make his contract good, and to pay the same, in case the said Collins fails to do so; that upon the payment of said judgment by complainant, he is entitled to all the interest of respondents in said land and all the improvements thereon, and to a release from the respondents of the contract aforesaid. They answer the allegation in the bill as to the sale of the land for the taxes; and the answer prays, that if the tax-deed is set aside, and the land decreed to be sold, the said one hundred acres may be exempted from the sale until the said judgment is paid off and discharged, and that the proceeds of the remainder of said tract may be applied to first pay off the note or bond assigned by John B. Smith to respondents, for a part of the original purchase-money due Ruffner, and next to pay off and discharge the said judgment recovered against Collins; and they pray to be hence dismissed, &c.

On the 24th day of May, 1877, the defendant, J. S. Staunton, presented to the court a cross-bill, and asked leave to file it in the cause. To the filing of this cross-bill the plaintiff, Worthington, objected; but his objection was overruled, and the cross-bill was filed. Thereupon, as the order shows, Worthington, one of the defendants to the said cross-bill, tendered a demurrer thereto, which was set down for argument; and the other defendants to said cross-bill, J. M. Staunton and C. B. Staunton, filed their answers to said bill, to which the plaintiff then replied generally.

The said cross-bill sets up the original bill in the cause, and proceeds to state what steps had been taken in the cause. The said J. G. Staunton in said bill alleges that it was he who made the contract with Collins on the 5th of September, 1859, for the purchase of the one hundred

acres, and that at the time said contract was made, both he and said Collins supposed that the beginning corner to the said one hundred acres was a point on Mill creek "twenty poles above the old cannel coal entry," as described in said contract;—that both said plaintiff and Collins intended by said contract of September 5, 1859, to so locate the beginning corner and boundaries of said one hundred acres, as in said contract set forth, beginning at the point " twenty poles above the old cannel coal entry;"—that both he and said Collins, before entering into the said contract, *went on* THE GROUND described in said contract, and examined the premises, and located the point "A," which is the beginning corner of said one hundred acres, at the point on Mill creek, " twenty poles above the old cannel coal entry" by *actual measurement* on the ground ; and it was with reference to that point so located that both plaintiff and Collins entered into the contract ; that they both supposed, when they made the contract, that the report and map of survey made by John L. Cole in August, 1859, and referred to in said contract, located the point "A," mentioned in said contract, " twenty poles above the old cannel coal entry ;" and neither the plaintiff nor the said Collins had any knowledge or intimation that the said Cole had located the point "A" at any other place in his plat and report, than the one before designated, until long after said Worthington had commenced his said suit, nor until said Cole's deposition was taken therein;—that said Worthington is now claiming that said Cole, in his map and survey of August, 1859, referred to in said contract, located said point "A" and the line running therefrom south thirty-seven degrees east at the same place, where the point "A" and the partition line running therefrom is located in the partition between Worthington, Hale and Longmore on the one side, and Corwin and Finnell on the other, in the partition suit by Lewis Ruffner, as set out in the answers of J. G., J. M. and A. C. Staunton, to wit, on Mill creek some *fifty poles*

28

above the old cannel coal entry; and that the location on Cole's map shall control and govern the contract.

The plaintiff alleges that such a construction of said contract would be a gross fraud upon him ;—that he entered into said contract solely on account of the value of the land as containing valuable deposits of cannel coal, and that the most valuable part of said one hundred acres is between a line running south thirty-seven degrees east from a point on Mill creek, "twenty poles above the old cannel coal entry," and the point "A" on said Cole's map, and the partition line run therefrom. The plaintiff now alleges, that if by the fair and legal construction of said contract the beginning corner can be located at any other place than "twenty poles above the old cannel coal entry," then the said contract was entered into by both plaintiff and Collins in mutual mistake, and the contract should be set aside and rescinded for such mistake. He prays that, if said contract shall be construed differently from what he and Collins understood it, as before indicated, it be rescinded for that reason, and prays for general relief.

Worthington demurred to the said bill, first, for want of equity ; second, because the bill was not filed in time; third, because the matters therein set forth are inconsistent with the plaintiff's answer to original bill ; fourth, because it is not alleged that there was also a mistake on Worthington's part, he being interested in said contract.

On the 25th of May, 1879, Worthington filed his answer to the cross-bill, to which a general replication was made. This answer denies that any mistake existed, and insists that unless such mistake existed also as to Worthington, he being interested in the contract as guarantor, &c., such mistake as to the others cannot avail them. He charges the plaintiff with taking much timber and cannel coal from the land and depreciating its value and that by a rescission of the contract he could not be restored to his former position. He denies that plaintiff first discovered that the point "A" on Cole's map

was more than "twenty poles above the old cannel coal entry" since the taking of Cole's deposition. He prays that said cross-bill be dismissed.

On the 17th day of November, 1869, the defendant, R. A. Collins, filed his answer to the original bill. In said answer Collins admits that complainant's bill probably recites correctly the terms of the purchase by the respondent of complainant and his co-vendors, Hale, Longmore and Saulsbury, of the moiety of one thousand six hundred and forty-six acres of land on the waters of Mill creek in Kanawha county, and refers to said deed of conveyance, which, he avers, is a deed with covenant of general warranty. He avers that at the time of the execution of said deed the title to said land in said grantors was fatally defective, and that said defects have multiplied with lapse of time; that at the time of the conveyance, Ruffner, the grantor of said Worthington, and others had a vendor's lien on said land for $7,800.00; that part of the purchase-money secured by said lien had been by Ruffner assigned to one John B. Smith; that one William A. Riggs claims to be the owner of another portion thereof by assignment; that at said time there were a number of judgment-liens against one of his grantors, J. P. Hale, which the answer enumerates, and that none of said judgments had been satisfied; that Lewis and Daniel Ruffner were the joint owners of the tract of three thousand two hundred and ninety-two acres on Mill creek, which embraced the tract of land conveyed by Lewis Ruffner to Hale, Worthington and Longmore; that in the conveyance by Ruffner to said Worthington, Hale and Longmore, bearing date August 28, 1857, he, the said Ruffner, covenanted to convey to his aforesaid grantees one half of his moiety (his moiety being one thousand six hundred and forty-six acres), and that the portion so conveyed to said Hale, Worthington and Longmore *should lie south of a certain red line, represented on a map* attached to said Ruffner's original deed, which is filed in the papers of the cause; that said

Worthingto\ and others in their deed to respondent covenanted to convey precisely the same tract, as was conveyed to them by said Ruffner; and it was the meaning of said deed, and the understanding and agreement between the contracting parties, that the half of said one thousand six hundred and forty-six acres conveyed to respondent *should lie south of the red line aforesaid*; and it was that covenant in the deed, and that understanding, which induced respondent to agree to pay the large consideration specified in the deed, for the reason that the tract was only valuable as a cannel coal property and was almost worthless for any other purpose; *and all the cannel coal upon the tract lies south of the red line aforesaid;* that the moiety of said three thousand two hundred and ninety-two acres, formerly owned by Daniel Ruffner, after several conveyances became vested in Thomas Corwin and John W Finnell, and in the partition of said three thousand two hundred and ninety-two acres, which was made in 1865, at the suit of *Lewis Ruffner* v. *Corwin, Finnell et al.*, (the partition deed being made by John L. Cole, special commissioner, and bearing date June 2, 1865) nearly one half of that part of said tract which was set off to said Hale, Worthington and Longmore, as their full part and share of said three thousand two hundred and ninety-two acres, *lies north of the red line aforesaid,* as will be seen by reference to said Cole's deed, and to the commissioner's report and plat of partition in the suit aforesaid, and to the decree of partition made in said suit on the 14th of April, 1865, all of which is prayed to be read and considered a part of the said answer; that he can hold under his deed from the complainant and his co-grantors such land only as was assigned to them in the partition aforesaid, and that all of said land that lies *north* of said red line is of very little value, and wholly worthless to respondent, as it contains no cannel coal, and is almost inaccessible. Respondent does not receive the same land or its equivalent, which he purchased of the said parties, and which by their deed they conveyed to him.

1880
Special Term.

Worthington
v.
Staunton et al.

He then sets up his sale to Staunton, and the circumstances thereof, and says, that in the said partition a portion of the land, which he had agreed to convey to Staunton, was set off and conveyed to Corwin and Finnell, and that it is consequently out of respondent's power to comply with his contract with Staunton. He avers that it is impossible for complainant and his co-grantors to perfect their title aforesaid, and make to this respondent good title to the land he purchased of them. He avers that he has paid of the purchase-money as follows: On the 1st of April, 1858, (see deed) $2,000.00 and $31.66 accrued interest thereon; also the further sum of $600.00, as per terms of title-bond and contract of date July 1, 1858. He prays that if the camplainant and his co-grantors do not perfect their title to the land they conveyed to him within a reasonable time, the said deed may be rescinded and annulled, and that respondent may have a decree for his purchase-money he has paid, with interest, &c.

This answer was by Worthington replied to *generally;* but no *special* replication was ever filed thereto.

The one hundred acres sold by Collins to J. G. Staunton, by contract dated September 6, 1859, is described in said contract, as follows: "The following piece or parcel of land known as described in and on the report and map of survey made in August, 1859, by John L. Cole, surveyor of Kanawha county: Beginning at a stake at A on Mill creek, in Kanawha county, Virginia, *twenty poles above the mouth of the old cannel coal entry;* said stake being corner to Finnell & Co.'s, *i. e.* Kanawha Cannel Coal Mining and Oil Manufacturing Company's land, or lot "A" on said Cole's map, and running with the line of the same south thirty-seven degrees east to such point as with the following boundaries and lines shall embrace and include one hundred acres; thence north forty-five degrees east parallel with the main right line of lot number two of the Work and Curran survey to the right hand fork of Mill creek; thence

down said fork and down Mill creek with their meanderings and with the line surveyed by Young Matthews in December, 1858, to the place of beginning at 'A.'"
The contract bound Collins to make to Staunton a general warranty deed for said one hundred acres. The contract also contained this provision : "And furthermore it is expressly agreed and understood by and between the parties hereto, that if from any cause the party of the first part shall fail, neglect or refuse to perfect the title to, and remove all liens and encumbrances from, said premises, and make said warranty deed to said party of the second part at the time and in the manner above specified, the measure of damages in any action brought for such failure by the party of the second part against the party of the first part shall be the full amount of the purchase-money he shall have paid thereon, if any, the full value of any and all improvements put upon said premises by said party of the second part, and a reasonable compensation for the damages resulting to him, the said party of the second part, in the obstruction of his business in consequence of such failure, less the reasonable value of the coal used during the occupancy of the party of the second part."

On the next day, the 6th of September, 1859, the said Worthington, Longmore and Saulsbury made the contract heretofore referred to, in which this language is used : " We do hereby jointly and severally approve, ratify, confirm and guarantee said contract between said Collins and said Staunton in all its terms and conditions, and agree to protect said Collins against any loss, cost or damage, which he may suffer in consequence of our failure to make such title good ; and furthermore we hereby agree to proceed immediately to perfect title to said land above referred to, and intended to be described, and to relieve the same of all liens and encumbrances thereon, except said lien for the purchase-money from said Collins to us, and to perfect title and remove said liens by the 1st day of February next," &c.

The record of the attachment-suit brought by J. G. Staunton v. R. H. Collins shows that there was no service of process on Collins, and no appearance in the suit by him; that the suit was matured upon order of publication, and the record presents the singular fact, under these circumstances, of a *personal* judgment entered against Collins.

On the 17th of November, 1869, the cause was referred to commissioner R. H. Freer, with instructions to state and report, First: An account showing the amount of purchase-money due from R. H. Collins to the complainant, under the deed of April 9, 1859; Second: An account showing the payments made by the Stauntons, or either of them, on the one hundred acres sold by Collins to J. G. Staunton; Third: What interest, if any, was held by John P. Hale in the said tract of land sold to Collins at the date of the conveyance, and the liens upon said interest by judgment or otherwise. The said Freer failing to make said report, W. H. Hogeman was substituted to execute said order of reference.

On the 9th day of May, 1876, commissioner Hogeman filed his report. He finds: First—That R. H. Collins owed on the 1st day of May, 1876, on the purchase-money secured to be paid by the lien in the deed of April 19, 1859, principal and interest, $43,975.34, and that he had paid no part of the purchase-money on said purchase. Second—That the Stauntons had not paid any of the purchase-money to Collins on account of the purchase of the one hundred acres; but that J. M. Staunton had paid of the purchase-money due from Worthington, Hale and Longmore to Louis Ruffner, which was secured in a lien in the deed from said Ruffner to Worthington, &c., principal $1,500.00, which, with interest thereon to May 1, 1876, amounts to $2,970.00. Third—That at the date of the conveyance from Worthington and others to Collins there were no docketed judgments against John P. Hale. In answer to the following enquiries made by J. G. and J. M. Staunton: First—Whether

Collins has complied with his contract with J. G. Staunton as to the sale of the one hundred acres; Second—Whether said Collins is able to comply with said contract—the commissioner finds specially, that Collins has not complied with said contract; and then, by a very unsatisfactory process of reasoning, comes to the conclusion that said Collins can comply with said contract. In answer to the enquiry of Collins: whether he has obtained a good title to the tract of land which Hale, Worthington and Longmore conveyed to him by deed dated April 19, 1859; and whether said parties can make good title to said tract—the commissioner finds that the title is good.

Collins and the Stauntons excepted to the commissioner's report.

From the testimony it abundantly appears, that both Collins and Staunton, the contracting parties as to the sale and purchase of the one hundred acres, thought at the time of the making of said contract, that the beginning corner of said one hundred acres was "twenty poles above the old cannel coal entry;" that they were both on the ground and measured it, and that they did not know or suppose that the point "A" referred to on Cole's map, to which reference is had in the contract, was anywhere else than "twenty poles above the old cannel coal entry."

It also appears from the evidence in the record, that about *three hundred acres* by the partition was assigned to Hale, Worthington and Longmore, the grantors of Collins, *north of the red line* as shown on the map, and the same number of acres was taken from the boundary sold to Collins *south* of the said red line and assigned to other parties; and that the land *south* of the said red line was much more valuable than the land *north* of said *red line.*

It also appears from the record of the partition suit, that the tract of three thousand two hundred and ninety-two acres was purchased at a sale of the commissioner

of delinquent and forfeited lands by Louis Ruffner and Daniel Ruffner, and the deed by said commissioner was made to them, the said sale taking place in 1840; that on the 15th of October, 1850, Daniel Ruffner and wife conveyed to Charles, Augustus, James and Joel Ruffner four undivided fifths of his moiety of said land; and that on the 4th day of September, 1854, the said Daniel Ruffner and wife conveyed the remaining undivided fifth of said moiety to Elizabeth Wilson; that on the 12th day of August, 1857, the said grantees of said Daniel Ruffner conveyed all their interest in said tract of land, being one undivided moiety thereof, to Thomas Corwin and John W. Finnell; that on the 23d day of January, 1858, the said Corwin and wife and Finnell and wife conveyed said moiety to The Cannel Coal Mining and Oil Manufacturing Company; that prior to the conveyance to Corwin and Finnell the said Lewis Ruffner sold, and afterward, on the 28th day of August, 1857, conveyed one fourth of said large tract of land, being one half his interest therein, to Hale, Worthington and and Longmore, to be laid off *south of the red line* on the plat of the said tract accompanying said deed.

The prayer of Lewis Ruffner's bill, for partition (said Ruffner still owning one undivided fourth of said large tract) was, "that Thomas Corwin, John W. Finnell, John P. Hale, Hugh P. Longmore and Henry Worthington be made defendants thereto; that commissioners be appointed to divide the said tract of land between the parties entitled thereto; that the plaintiff's portion be allotted to him, and that the portion sold by the plaintiff to Hale, Worthington and Longmore might be laid off, if it could be done consistently with the rights of the other parties interested, pursuant to the terms and provisions of plaintiff's deed to them." The court appointed commissioners, and in accordance with the prayer of the bill instructed them to "so lay off and assign the lot of the defendants Hale, Worthington and Longmore, that the same may lie *south of the red line*" in the plat exhibi-

ted with the bill. The commissioners filed their report ; and in Worthington's answer filed in the cause, he strenuously objects to the report for the following, among other reasons : "Because it departs from the decree which directs the portion, conveyed by L. Ruffner to respondent and others to be laid off on the *south west* side of said red line.

The report was re-committed to the commissioners with instructions to lay off the interest of Hale, Worthington and Longmore "*south of the red line,* if it could be done with due regard to the interest of the other co-tenants." The commissioners again filed their report, in which they say : " *We could not* consistently, with a due regard to the rights and interests of all the parties assign to the defendants, Hale, Worthington and Longmore, the whole of their interest *on the south side of the red line.*" This report was not excepted to and was confirmed. As before stated, it assigned about three hundred acres of the interest of Hale, Worthington and Longmore *north* of the red line, which they had before conveyed by metes and bounds and with general warranty to Collins, as lying *south* of the red line.

On the 11th day of January, 1878, the court by its decree decided that " the point 'A,' mentioned in the contract of September 5, 1859, between R. H. Collins and J. G. Staunton, set out in plaintiff's bill as the beginning corner of the tract of one hundred acres which said Collins by said contract agreed to sell and convey to said Staunton, was by the terms of said contract and by the intention of both the parties thereto located twenty poles above the mouth of the old cannel coal entry mentioned in said contract ; and that inasmuch as in the partition of the larger tract, of which the tract described in said contract formed part of said one hundred acres now assigned to others, so that neither the said Collins, nor the plaintiff Worthington, is able to comply with the terms of said contract on their part, the court therefore refuses to enforce specific performance of said

contract against said Staunton; and the court is further of opinion and doth decide, that said J. G. Staunton is entitled to a rescission of said contract with said Collins of September 5, 1859, so far as the same provides for the sale by said Collins and the purchase by said Staunton of the one hundred acres of land therein bounded and described." The decree proceeds formally to rescind said contract of sale of the one hundred acres, and further provides " that if any of the parties to the suit is entitled to any further remedy or remedies upon said contract of September 5, 1859, or upon the contract set out in the pleadings in this case between H. Worthington, H. P. Longmore and J. H. Saulsbury of the one part, and R. H. Collins of the other part, dated September 6, 1859, by way of damages or otherwise for breach or breaches of said contracts or either of them by any of the parties thereto, such remedy or remedies should be had and prosecuted in proper actions at law ; and the court doth decline to adjudicate any such claim in this suit, but saves and reserves to said parties all such legal rights and remedies as they may be entitled to have upon said contracts or either of them, and herein remits such parties to such legal rights and remedies as they may be entitled to have upon said contracts or either of them."

The decree further recites, that the defendant J. M. Staunton had become the owner by assignment of a certain note executed by Worthington, Hale and Longmore to Lewis Ruffner for a part of the purchase-money of said land so sold by them to Collins, which at the date of the decree amounted, principal and interest, to $3,090.00, which was secured by a vendor's lien in the deed from Ruffner ; and that said note was purchased for the benefit of J. G., J. M. and A. C. Staunton. The decree subrogates the said J. M. and J. G. Staunton, survivors of themselves and A. C. Staunton, deceased, to the rights of the said Lewis Ruffner ; and finds that the same constitutes the first lien on said land ; and that the Stauntons had paid certain taxes, amounting princi-

pal and interest to $463.72, which was the second lien on said land. The decree proceeds to ascertain that the said R. H. Collins is indebted to the said Henry Worthington on account of purchase-money secured by the lien in the deed from Worthington, Hale and Longmore to said Collins of principal and interest the sum of $46,328.03, and that said sum constitutes the third lien on said land; and decrees, that unless the said Collins pays the sum decreed against him, to be paid within one hundred and twenty days from the adjournment of the court, then commissioners, in said decree appointed, should sell the tract of land for the payment of the same; not the tract described in this deed from Worthington, Hale and Longmore, but the land described in the partition-deed to said Worthington, Hale and Longmore.

An appeal was allowed Henry Worthington on his petition to the whole of the above decree, and also a *supersedeas* to the same, except so much as affected the defendant R. H. Collins.

Collins appeared in this court, and assigned errors in said decree as against him, and asks that the said decree as to him be reversed, and the deed to him be cancelled and annulled, because he does not get substantially the land conveyed by said deed with general warranty.

*William H. Hogeman and John L. Cole,* for appellant, cited the following authorites:

17 Mass. 211; 2 Me. 213; 2 Black 499; 4 Wheat. 444; 10 W. Va. 40; 7 W. Va. 460; 5 Otto 18; 16 Ohio 60; 13 Ohio 220; 1 Story Eq. Jur. §§164, 165; 10 Wheat. 189; 9 Pet. 503; 39 Ind. 318; 10 Pet. 209; 5 Mass. 572; 6 Ala. 518; 3 Gratt. 518; 5 W. Va. 135; 10 W. Va. 321; 4 Bibb (Ky.) 76; 14 Gratt. 82; 11 Gratt. 340; 2 Rob. 273; Freeman Co-tenancy & Partition §199; 12 Metc. (Mass.) 175; 20 Pick. 458; 12 Pick. 46.

*Smith & Knight,* for appellees J. G., J. M. and A. C. Staunton, relied upon the following authorities:

2 Wheat. 297 ; 5 Cranch 262 ; 19 Gratt. 571 ; 11 Gratt. 468 ; 1 Story Eq. §§134, 153–156, 161 ; 6 Leigh 175 ; 1 H. & M. 129.

*James H. Ferguson,* for appellees Stauntons :

I. *The allegations of the plaintiff's bill are wholly insufficient to enable him to maintain this suit against the defendants Staunton, or either of them.*

He files with his bill the contract between Collins and Staunton, and the guaranty thereof by himself and his associates. Avers that the purchase-money of the one hundred acres remains unpaid, and asks that the land be sold to pay it.

But he does not aver that the notes of Staunton to Collins for said purchase-money have been transferred to him, or that he is the owner of them, nor does he produce or file them with his bill.

He does not aver that Collins had performed or offered to perform his contract, in whole or in part, with Staunton, or that the liens and encumbrances on the land, or any of them, had been removed either by himself or Collins, or even that an effort had been made to remove them, or any of them.

No deed for the one hundred acres, or any part thereof, is tendered with the bill, and no reason is given why it is not done.

And in addition to all this he shows by his contract with Gordon, filed with his bill, that a lien remains on the land for a part of the purchase-money thereof, and by the express terms of the contract between Collins and Staunton he, Staunton, was not to pay any of the purchase-money until all the liens on the lands were removed.

This contract with Gordon also shows that he is not even the owner of the notes of Collins upon which he sues, and that he only has them under his control as collateral security for the payment of his debt from Gordon.

II. *The court properly decided that the beginning corner of the one hundred acres of land in question was twenty poles above the mouth of the old cannel coal entry named in the contract between Collins and Staunton.*

The evidence on this point is overwhelming, and no one, except the commissioner, ever would or could have come to any other conclusion.

III. *The contract between Collins and Staunton was properly rescinded.*

This decision necessarily followed the other, for the reasons stated in the decree.

IV. *The plaintiff is in no way injured by the decree appealed from.*

He has a decree against Collins for all that is due him, and this is all that he is entitled to. His lien on the land against Collins was in no way affected by the sale to Staunton, and if Staunton had paid the purchase-money, it would have been that much worse for the plaintiff under his said guaranty.

The decree appealed from, we submit, should therefore be affirmed.

*William A. Quarrier* for appellee Collins.

1. When an answer is filed alleging new matter, constituting a claim for affirmative relief, and there is no replication to the answer, general or special, then such new matter is confessed by the complainant and no proof required. The defendant is entitled to such relief as his facts demand. Code, §35, ch. 125; 3 W. Va., 438.

2. The complainant in this case having failed to perform his part of the contract cannot have specific execution as to the defendant Collins. 2 Story's Equity, §778 and note 2; *Colston* v. *Thompson,* 2 Wheat. 326; *Kendall* v. *Abney,* 2 Sumner 278.

3. The court should amend and correct the decree,

rescind the contract between the complainant and *als,* and Collins, and decree in favor of Collins for the purchase-money paid by him.

4. Under the ninth rule of this court, no petition for an appeal need be filed, and no appeal need be awarded to enable the court to correct an error in the record which is prejudicial to one of appellees, the court having taken jurisdiction on the petition of appellant will examine the whole case, and correct all errors, whether prejudicial to appellant or appellees.

JOHNSON, JUDGE, delivered the opinion of the Court:

It is insisted by counsel for the Stauntons, that the allegations of the bill are wholly insufficient to enable the plaintiff to maintain his suit against the said Stauntons or either of them ; that the plaintiff files with his bill the contract between Collins and J. G. Staunton for the sale and purchase of the one hundred acres and the written guaranty of said contract by himself and his co-grantors, and alleges that the purchase-money for the one hundred acres remains unpaid, and asks that the said land be sold to pay said purchase-money, but does not allege that the notes of Staunton to Collins for the purchase-money have been transferred to him, or that he is the owner of them, nor does he produce them. This is true. It does not appear from said guaranty of the contract between said Collins and Staunton, that there was any obligation whatever resting upon J. G. Staunton to pay one cent of the purchase-money to Worthington or his associates. The guaranty is signed by no person except Worthington, Longmore and Saulsbury, and the clause relating to payment of purchase-money by Staunton to the said guarantors is this and nothing more : "And further, that upon the payment to Henry Worthington for us, by the said Staunton or his a-signs, of the purchase-money and interest as agreed in said contract (*i. e.* the contract between Collins and

Staunton), that we, the said Henry Worthington, Hugh Paul Longmore and James H. Saulsbury, *will release said one hundred acres of land from the lien for purchase-money from said Collins,* and that each payment so made shall be applied for that purpose." Here is clearly no obligation on the part of Staunton to pay them purchase-money, even if he had signed the paper, which he did not, but a promise merely on the part of the plaintiff and his associates, that, if Staunton would pay them the purchase-money he had agreed to pay Collins, they would release the one hundred acres from their lien for purchase-money retained in the deed to Collins. The bill does not pretend that plaintiff is the owner of the notes or obligations of Staunton to Collins for the payment of the purchase-money of the one hundred acres; and it utterly fails to show any equity against the said Stauntons or either of them as to the last named purchase-money; and of course no decree could have been rendered against them therefor on the showing of the plaintiff's bill.

Could the court then under the pleadings in the cause rescind the contract between Staunton and Collins?

In *Vance* v. *Evans et al.,* 11 W. Va. 342, it was held that a decree between co-defendants can only be based upon the pleadings and proofs between the *complainants* and *defendants;* that where a case is made out between co-defendants by evidence arising from pleadings between the complainants and defendants, a court of equity should render a decree between the co-defendants; but where there are no such pleadings, a court of equity cannot render a decree between the co-defendants. The principles laid down in that case result from necessity. If the rule was not adhered to, the administration of justice would become extremely difficult, if not impossible in many cas. s. It could not be known when, where or how a chancery cause would terminate if all the parties, who had any interest in the subject-matter of the bill, and who were therefore necessary defendants thereto,

could, to save time and expense, by filing their answers in that cause, or cross-bills, litigate all their differences which were in any way however remotely connected with the subject-matter of the bill, and in which plaintiff had no special interest. The collateral issues in such a case might be interminable.

We think it very clear that there is nothing in the bill of plaintiff, and nothing in any of the pleadings and proofs between the plaintiffs and defendants, that could authorize a decree between the co-defendants, Collins and Stauntons, as to their contract; and therefore the decree in this cause rescinding the contract between the said co-defendants was unauthorized. There is nothing in the guaranty of the contract, that could of itself give a court of equity jurisdiction, as it is not alleged that it was procured by fraud, or that it was founded in mistake.

This conclusion makes it not only unnecessary, but improper, for the appellate court to construe the said contract. Nor is it necessary, as we shall see, to put any construction upon the said guaranty.

As the cross-bill was filed for the express purpose of procuring a rescission of the contract, and as we have seen the said contract could not be rescinded in this cause, the demurrer to said cross-bill ought to have been sustained.

But it is insisted that the said decree, so far as it affects the said contract between Collins and Staunton, is not to the prejudice of the appellant, and he has no right therefore to complain of it. If this were true, still if it were prejudicial to the rights of other parties in the suit, it might have to be reversed.

May it not be to the prejudice of the plaintiff? It does not rescind the contract *in toto*, but only so far as it related to the sale of the one hundred acres, and remits the parties to a suit at law upon the said contract; and as the plaintiff was a guarantor of the contract, the decree might be to his prejudice in any action upon the contract in a court of law. We do not decide this ques-

1880
Special Term.

Worthington
v.
Staunton et al.

tion, nor express any opinion as to the effect of said guaranty. For the same reason, viz.: that the decree might prejudice the rights of the plaintiff, being only a partial rescission, might it not also prejudice the rights of the defendant, Collins? As the bill contains no equity against the Stauntons, the plaintiff was not prejudiced by the filing of the cross-bill, although it was improperly filed. The defendants, the Stauntons, were evidently in- . duced to file it by the allegations in the bill, and by the attempt on the part of the plaintiff to take the benefit of the contract between the Stauntons and Collins.

It is here insisted by counsel for appellant, that the appeal and *supersedeas* in this cause expressly exclude from their operation certain portions of the decree of January 11, 1878, and therefore no error in those portions of the decree so excluded, if any exists, can be reviewed on this appeal at the instance of either party. The counsel is mistaken as to an important fact. The appeal was allowed to the *whole* of said decree, and a *supersedeas* to all said decree, except so much thereof as ordered the land to be sold unless the defendant, R. H. Collins, should, within a time specified, pay the purchase-money. Collins is an appellee; and he here asks that said decree be reversed as to him, and the deed from the plaintiff and others to him be cancelled, and the purchase-money paid by him be refunded. The whole decree may be reviewed by the Court; and any error therein to the prejudice of any of the parties to the suit, whether appellants or appellees, complaining thereof, may be corrected. This must necessarily be so, because the effect of a general affirmance of the decree would bar any of the parties from an appeal thereafter. *Newman* v. *Mollohan*, 10 W. Va. 488.

Is the decree erroneous as to said Collins? The decree enforces the vendor's lien retained in the deed exhibited with the bill, and requires over $43,000.00 to be paid by Collins; and if said payment was not made within a certain time specified in said decree, the land was re-

quired to be sold to pay it. Collins insists that the circuit court should have cancelled and annulled said deed for the reasons set up in his answer, and that his purchase-money paid should have been decreed to be paid to him. .

What was the effect of the conveyance of Ruffner, to Hale, Worthington and Longmore of one moiety of his interest in the large tract of land owned jointly by himself and Daniel Ruffner, in which deed he purports to convey said land by metes and bounds, as lying *south of a certain red line* drawn across the map of said land? And also what is the effect of the deed from Hale, Worthington and Longmore for the same interest conveyed by precisely the same description, made to the defendant Collins? These deeds were both made before the partition of the land, as was also the contract between Staunton and Collins; and the partition, as we have seen, allotted to others about three hundred acres of the land sold to Collins.

It is of course well settled that a co-tenant may convey at pleasure his undivided interest in the whole tract without the knowledge or consent of his companions in interest. Freeman on Co-tenancy and Partition, section 194 and cases cited. The same author in section 199 says: " That deeds made by one co-tenant conveying a part of the real estate of a co-tenancy by metes and bounds are undoubtedly void, and the other co-tenants may at all times so treat them, is a general declaration made in express terms in some of the cases, and well supported by a long train of decisions, though we cannot see that these decisions are in turn supported by reason, or are necessary to the preservation of the rights of the other cotenants." He cites a large number of these decisions, which upon a close examination do not, I think, go to the extent he seems to think they do.

In *Carroll* v. *Norwood,* 1 Har. & J. 100. Chase, Chief Justice, declared in general terms that a tenant in com-

mon of an undivided tract of land could not convey his moiety describing the same by courses and distances.

In *Griswold* v. *Johnson*, 5 Conn. 363, the court by Hosmer, Chief Justice, said: "The deed of this common estate by metes and bounds, the one tenant in common then attempting to make a partition of the property without any co-operation of the other, is undoubtedly void. The point is at rest and not to be questioned."

To the same effect is *Porter* v. *Hill*, 9 Mass. 34. In these cases the co-tenants or their assigns, to whose prejudice the deeds were being used, were interested parties, and while the language of the court was too broad perhaps, all that properly was decided in these cases was, that a co-tenant could not to the prejudice of another co-tenant convey a part of the undivided property by metes and bounds. The proposition maintained in the great majority of the cases cited by Freeman is, that a tenant in common cannot convey a distinct portion of the estate by metes and bounds to the prejudice of his co-tenants or their assigns ; and that as to them such deed is inoperative and void, though many of them expressly hold that such deed will bind the grantor therein. *Richardson* v. *Miller*, 48 Miss. 311 ; *Boston Franklinite Co.* v. *Condit & Torrey*, 19 N. J. Eq. 394 ; *Duncan* v. *Sylvester*, 24 Me. 482 ; *Great Falls Co.* v. *Worster*, 15 N. H. 412 ; *Holcomb* v. *Coryell*, 3 Stock. 548 ; *Dorn* v. *Durham*, 24 Tex. 366 ; *Good* v. *Coombs*, 28 Tex. 34 ; *Primm* v. *Walker*, 38 Mo. 94 ; *Varnum* v. *Abbot*, &c., 12 Mass. 480.

In *Lessee of White* v. *Sayre*, 1 Ohio 304, it was held, that a "tenant in common can convey a part of his undivided estate, and that a deed by a tenant in common purporting to convey in severalty is a good conveyance for the grantor's undivided part within its boundaries." To the same effect is *Treon's lessees* v. *Emerick*, 6 Ohio 392.

In *Prentiss's Case*, 7 Ohio 470, it was held that "where a tenant in common has made separate conveyances of his entire right in various parcels of the land held in com-

mon, so that each purchaser's title is separate and distinct, the other tenant in common cannot sustain a joint suit for partition against such purchasers, but must bring a a separate suit against each." This is certainly giving an undue effect to the deed of one tenant in common to the prejudice of his co-tenant.

In *Dennison* v. *Foster, et al.*, 9 Ohio 126, it was held that "one tenant in common cannot work a division of the common property by conveying his share in a deed defining its limits by metes and bounds. The effect of such deed is to pass to the purchaser the grantor's proportional interest in the part described in the deed. Tenants making such separation of interests and their heirs are bound by it, especially if the deed contains covenants of warranty, and it may be ratified by the co-tenants."

In *Barnhart* v. *Campbell*, 50 Mo. 597, it is held against the whole current of authority, as I conceive, "that a conveyance of his interest by metes and bounds by a tenant in common is valid, even as to his co-tenant. The statute of partition prevents any injustice." The court by Adams Judge said, that the declaration in *Primm* v. *Walker*, 38 Mo. 94, above cited, "that a conveyance by a tenant in common of a portion of the common land by metes and bounds would be void as to his co-tenant," was a mere *obiter dictum* of the judge, and could not be regarded as authority. He further says, "In England and many of our sister States the law seems to be well settled, that such a conveyance is void as to the co-tenant who does not consent. The only reason given is, that it would render a partition of the land more difficult, and compel the co-tenant to take smaller pieces and more of them to make up his share. But this reason is not applicable to our laws concerning partitions. Here the partition is not necessarily made in kind, as it is in other states and in England; but if partition in kind would prejudice the rights of the parties, the land is required to be sold, and the proceeds divided among the

parties according to their respective rights. Each party has the chance to purchase such quantities as he may think proper." To my mind the reasoning of the learned judge is far from satisfactory. That one tenant in common, against the consent of his co-tenants, by his act can put it out of the power of his co-tenant to have partition in kind of the common property, is a proposition not sustained either by justice, reason or authority. It might be impossible for the co-tenant to protect himself by a purchase of the property, or any part thereof; again, he might be very averse to buying small parcels of land not adjoining each other. He might want his portion all laid off together and near property that he individually owned, and a court of equity would so lay it off, if it could be done consistently with the rights of his co-tenants; but if one co-tenant by his mere deeds has the right to partition the property to suit himself, he not only may ruin his co-tenant, but he is permitted to usurp the powers of a court of chancery. It is no answer to say, "Let the whole property be sold, and we will divide the proceeds." That may be just what the other does not want; he has his interest, but he has no money with which to buy more, and he does not want his interest sacrificed by a sale.

In *Stark* v. *Barrett*, 15 Cal. 361, it was held, that "one joint tenant or tenant in common of land may convey his interest in a particular portion of the land described by specific metes and bounds, but the grantee takes subject to the co-tenant's right of partition of the whole tract. The grantee's title is good against his grantor and all persons except the co-tenant. The right of partition existing in the co-tenant may be exercised at any time, and may result in the loss to the grantee of the particular parcel conveyed to him. Until such partition the grantee is entitled to the use and occupation as co-tenant in such parcel with the other owners." To the same effect is *Gates* v. *Salmon*, 35 Cal. 576.

In *Soutter* v. *Porter*, 27 Me. 405, it was held that the

"conveyance by a tenant in common of a portion of the common estate by metes and bounds will not necessarily be inoperative upon his own rights, or the rights of others. The law will give effect to such conveyance so far as it may do so consistently with the preservation of the entire rights of the co-tenant, and no further. If the estate so conveyed by metes and bounds, or any part of it, shall upon partition of the premises be assigned to the right of the grantee or his assigns, the conveyance embracing it may operate and convey the title from the grantor to the grantee. Such a conveyance of a tenant in common, however, cannot in any event operate contrary to the expressed declarations and intentions of the parties, to convey an estate in common instead of an estate in severalty."

In *Robinett* v. *Preston's heirs*, 2 Rob. 274, it was stated that at the trial of the issue joined in a writ of right after the demandants had introduced a grant to their ancestor embracing the land demanded, the tenant introduced an earlier grant of the land to two grantees, and offered to give in evidence a deed from one of those grantees conveying by metes and bounds a particular part of the land to a person under whom he (the tenant) claimed, and also offered other evidence tending to prove that partition had been in fact made, though without deed, between the two grantees, the circuit court being of opinion that the conveyance by metes and bounds by one joint tenant of a portion of the land held in common was void, refused to permit the same to go in evidence to the jury; and a verdict and judgment were rendered for the demandants. Held: The circuit court erred; and its judgment is therefore reversed, the verdict set aside, and the case remanded for a new trial, on which the conveyance, if offered, is not to be rejected on the ground that it is void. Allen, Judge, said: "As between the joint tenants there may be good reason for holding that a conveyance by one of a specific parcel of the land should not affect his co-tenant. They are

seized *per mi et per tout;* and neither has a right at his election to convey a particular portion so as to affect or prejudice his co-tenant." He also approved the reasoning of the court in *Varnum* v. *Abbot,* 12 Mass. *supra,* in which the court after reviewing the cases in which it had been held that such a conveyance could have no legal effect to the prejudice of a co-tenant, proceeded to consider its effect as against the grantor, and determined that it is effectual against him. If upon a partition the share assigned to the co-tenant does not include the part conveyed, the co-tenant has got all he had a right to, and the grantor cannot be permitted to deny his deed. So in the case of a release by the co-tenant to the alienee of his moiety in the part conveyed, the alienee would have a deed from each, and yet if the first conveyance was merely void, it could not help the second." See also *McKee* v. *Barley,* 11 Gratt. 340.

In *Cox et al.* v. *McMullin,* 14 Gratt. 82, the court held, that "where two tenants in common of land having but an equitable title, one of them cannot appropriate to himself any specific portion of the common property, or do any act whatever in derogation of the rights of the others to enjoy equally with himself the common property and every parcel thereof. Although a party holding in common with others can do nothing to impair or vary in the slightest degree the rights of his co-tenants, yet if he execute a deed for a specific portion of the common subject, and make a contract in regard to it, and upon partition such portion falls in severally to the party so making the deed or contract, he will be bound by his act."

In *Johnson* v. *Stevens,* 7 Cush. 431, the court held, that a release to a tenant in common from his co-tenants of their interest in a specific part of the land held in common confirms a conveyance previously made by him of that part of the land. The deed therefore was not void, else it could not by the confirmation be made valid. The co-tenant could not by conveying a part of the land

held in common affect the rights' of another co-tenant;

but he certainly could affect his own rights, and the deed would therefore bind him; and when his co-tenants confirmed it, the grantee could have no right to complain.

In *Dorn* v. *Dunham*, 24 Tex. 366, it was held, that "a tenant in common of an undivided interest in land can not prejudice the rights of his co-tenants by an agreement to convey a designated portion of the tract; and a selection made by the obligee under it will confer no title on him as against such co-tenants. The tender of a deed from such obligor to the obligee for a different part of the tract from that agreed to be conveyed, and which had been selected in pursuance of their agreement, is not a compliance with the contract; and the obligee may refuse to accept it. If under such an agreement the obligors were unable to make title by reason of the land falling to the share of another in a partition between the co-tenants, the remedy of the obligee would be by a suit for damages for the breach of the contract." See *Boggess* v. *Meredith* supra.

From the foregoing authorities the following legal principles are deduced:

A co-tenant may convey at his pleasure his undivided interest in all the lands held in common without the knowledge or consent of his companions in interest. In this case the effect of the deed is to place the grantee in the deed in the same position that the grantor had previously occupied, and no possible injury could result to the other co-tenants in the tract. A deed from a co-tenant of a part of the land held in common, describing it by metes and and bounds, cannot in any way operate to the prejudice of the other tenants in common; they have the right to have the land partitioned unaffected by such deed. But in partition in such case a court of equity will allot the portion so conveyed by metes and bounds to the purchaser thereof, if it can be done without prejudice to the rights of the other co-tenants. Such deed will become operative and pass to the purchaser of

such lands by metes and bounds, if the other tenants in common before partition confirm and ratify it ; and after partition, if that portion is allotted to the purchaser; and in either case said deed will be binding on both the grantor and grantee.   But if a tenant in common convey with covenant of general warranty a part of the common subject by metes and bounds, and upon partition afterwards made a material part of the land so conveyed is allotted to other tenants in common, so that the purchaser does not obtain the substantial inducement to his contract of purchaser, upon the prayer of such purchaser a court of equity will cancel and annul such deed and place the parties *in statu quo.*

The vendor of real estate is not responsible for any defects of title, unless he has bound himself by some covenant or warranty to protect the vendee, unless he has been guilty of some fraud or concealment.   *Commonwealth* v. *McClanachan's ex'rs,* 4 Rand. 482.   But where he has bound himself to convey the land with covenant of general warranty, he is responsible for defect of title to any part of the land so sold ; and a court of equity will not compel the payment of the whole of the purchase-money until the defect is removed, *although there has been a conveyance of the land by the vendor.   Koger* v. *Kane's adm'r,* 5 Leigh 606; *Clark* v. *Hardgrove,* 7 Gratt. 399; *Renick* v. *Renick,* 5 W. Va. 285. And where a contract has been executed in mutual mistake in a matter which is the cause and subject of the contract, no fraud being imputable to either party ; such mistake is good ground in equity for rescinding the agreement, even after it has been fully executed by conveyances by both parties.   *Glassell* v. *Thomas,* 3 Leigh 113.

In the case here it is manifestly impossible for the vendor to make title to a very large portion of the land that Collins bought, and which was before the partition conveyed to him with covenant of general warranty. The evidence is clear and conclusive that he did not get

the substantial inducement to the contract; and it would be inequitable and unjust to require him to stand to his deed and pay the purchase-money, when he does not get the land he bought. He is asked to take three hundred acres of different and much less valuable land than that conveyed to him in satisfaction of his deed. The court has no right to make a contract for the parties; nor to require one of the parties to take land and pay for that which he did not buy in lieu of that which he did purchase. But, says the counsel for the appellant, "Collins knew, when he purchased, that the tract of three thousand two hundred and ninety-two acres was undivided, and that in any partition that might be made, the adjustment of the boundaries of the respective interests, as they might be laid off to the parties interested, would be subject to the control of the court making it. This was the risk he must be understood to have taken, when he bought an undivided interest; and his purchase must be construed to mean, that he became tenant in common in the whole tract with the other co-tenants." This would all be so perhaps, if the deed had contained no covenant of general warranty; but for the warranty in the deed he would have taken the risk, but that risk was just what he fortified himself against by his general warranty. The vendors warranted to him certain specific land, and warranted it against the claims of "all persons whomsoever"; and he was not therefore bound to take such lands as might be set off to him in the partition suit. If what he bought was allotted to him, he would be content, and would by law have been compelled to pay the purchase-money, because he would in that case have had no reason to complain; but if not so allotted to him, he was fully protected by his warranty.

For the foregoing reasons the decree of the circuit court of Kanawha county rendered in this cause on the 11th day of January, 1878, is reversed and annulled; and the said Stauntons must pay the appellant Worthington,

1880
Special Term.

Worthington
v.
Staunton *et al.*

the party substantially prevailing as to them, the costs of his appeal ; and the said appellant Worthington, must pay to the appellee, R. H. Collins, his costs in this appeal expended ; and this Court proceeding to render such decree as the said circuit court ought to have rendered, the demurrer to said cross-bill of said J. G. Staunton is sustained, and the said cross-bill is dismissed at the costs of said Staunton ; and as between the said plaintiff and appellant, Worthington, and defendant, R. H. Collins, the deed from H. P. Longmore and wife, Henry Worthington and wife, J. H. Saulsbury and J. P. Hale, to said R. H. Collins for the land in the bill mentioned, bearing date the 19th day of April, 1859, and filed as exhibit "C" with the bill, is cancelled and annulled, as are also the notes and bonds in the bill mentioned, given for the purchase ; and this cause is now remanded to the circuit court of Kanawha county with instructions to place the said defendant, R. H. Collins, and his said grantors in said deed *in statu quo*, and to take such account or accounts as may be necessary for that purpose according to the rules and principles of courts of equity in cases of rescinding contracts, and further to proceed with said cause according to the principle settled in this opinion, and further according to the principles and rules governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.